ST. PAUL TRUST CO. *vs.* GEORGE R. FINCH *et al.*

Argued Jan. 13, 1893.   Decided Jan. 20, 1893.

**Limited Partnership.**

A contract of partnership construed, and held that the capital of plaintiff's intestate was not due and payable on the date of expiration of the term of partnership, but only as the partnership assets were realized after dissolution, and after all the liabilities of the firm were paid, and that during such liquidation of the business such capital did not draw interest.

**Interest on Capital after Dissolution.**

Capital does not bear interest in the absence of an express agreement or a usage of the firm to allow it; and, even where there is an agreement that interest shall be allowed on capital, it ceases to operate at dissolution, for the reason that its earning capacity has ceased, and it is then resolved into property held only for purposes of distribution. Hence, a claim to have partnership accounts, subsequent to dissolution, taken with interest, as between the partners, (in the absence of facts raising particular equities,) can be maintained only upon the ground of an agreement to that effect.

**Same—In Absence of Needless Delay.**

The mere fact that it is known or ascertained what amount will be ultimately due one of the partners will not make the other partners, who have possession of the partnership property, liable for interest, if they are not guilty of a neglect of duty in not paying over the amount.

Appeal by plaintiff, the St. Paul Trust Company, as executor of the will of Norman W. Kittson, deceased, from an order of the District Court of Ramsey County, *Otis,* J., made September 24, 1892, denying its motion for a new trial.

The plaintiff is a corporation authorized by statute to act as executor of wills. Norman W. Kittson died testate May 10, 1888, and plaintiff was duly appointed executor of his will. On November 29, 1887, Kittson entered into a contract for a limited partnership under the firm name of Finch, Van Slyck & Co. to carry on mercantile business at St. Paul, in which he and Maurice Auerbach were to be special partners, and George R. Finch, William H. Van Slyck, Elbert A. Young and C. J. McConville were to be general partners. The partnership was to commence January 1, 1888, and end with December 31, 1890. Kittson put in $200,000; Auerbach, $100,000; Finch, $150,000; Van Slyck and McConville $75,000 each; total capital $600,000. At the end of each year, the net profits were to be divided as follows: Kittson, fifteen per cent.; Auerbach, seven and a half per cent.; Finch, Van Slyck and Young were each to have twenty and two-thirds per cent., and McConville the remaining fifteen and a half per cent. The general partners agreed that Kittson should, in any event, receive $1,666.66 profits per month, payable monthly, and Auerbach half as much. The death of either of the special partners, was not to end, or interfere with, the partnership business.

At the end of the three years the partnership assets were to be converted into money and the debts paid, then Kittson's capital and profits were to be paid, then Auerbach's capital and profits, then the capital of the general partners and six per cent. interest thereon per year during the three years. Any remaining profits were to be divided among the general partners in the proportions above stated. This contract was carried out. On the expiration of the partnership the plaintiff demanded of the general partners, Kittson's capital of $200,000, but it was not then paid. It was however, paid by the general partners as follows: March 31, 1891, $40,000; April 30, 1891, $40,000; May 29, 1891, $40,000; June 30, 1891, $40,000; August 24, 1891, $20,000; August 28, 1891, $20,000; but they re-

fused to pay interest accruing after December 31, 1890. These facts are stated in the complaint and judgment demanded for the interest, amounting to $6,009. There was no allegation, that the general partners had converted the assets, or used them in new business, or had realized any profits, or interest, on Kittson's capital, after December 31, 1890.

The answer alleged, and the trial court found, that on September 1, 1890, the general partners agreed with plaintiff to repay the $200,-000 on or before July 1, 1891, in monthly installments at their convenience, and plaintiff agreed to accept such payment and not require earlier payment. They paid Auerbach his capital in January, 1891, but plaintiff did not know this, or hear of it until January, 1892. On December 31, 1890, the general partners entered into a new partnership in which A. H. Wilder and Theodore Borup became special partners in the place of Kittson and Auerbach for the purpose of taking up, continuing and carrying on said mercantile business, and the new partnership acquired the property of the old, subject to its liabilities, which were large. Other facts are stated in the opinion. The trial court made findings and ordered judgment that plaintiff take nothing by its action. It moved for a new trial, and being denied, appealed to this court.

*Harvey Officer* and *Davis, Kellogg & Severance*, for appellant.

It is claimed by the defendants that they were entitled to a reasonable time to liquidate the business and pay the obligations, and that pending this time no interest should be allowed to Kittson. This would be correct if the liquidation of the business would render certain the amount to be paid the Kittson estate, but that amount was definite and fixed. The assets of the old firm and the new firm were mingled together and the new firm assumed all the obligations of the old firm, therefore the old firm had no debts or obligations to pay. They were paid and assumed on January 1, 1891, by the new firm. Where the surviving members of a partnership, or the partners who remain in the firm, for the purpose of liquidation, mingle the assets of the old firm with the assets of the new firm, or with their own, interest commences to run from that time. *Dunlap* v. *Watson*, 124

Mass. 305; *Crabtree* v. *Randall*, 133 Mass. 552; *Coddington* v. *Idell*, 30 N. J. Eq. 540.

It is a general principle that after the dissolution of a general partnership and during a settlement, before the amount to be paid to each partner is ascertained, no interest is allowed to the members of the firm; but this rule does not apply when a balance has been struck, or where by the terms of the agreement under which the partnership is formed, the amount is definite and certain. In the latter cases, the amount to be paid to any one partner draws interest at the legal rate from the date of the dissolution. *Honore* v. *Colmesnil*, 7 Dana, (Ky.) 199; *Ex parte Chippendale*, 4 De Gex, M. & G. 35; *Buckingham* v. *Ludlum*, 29 N. J. Eq. 350; *Carroll* v. *Little*, 73 Wis. 52; *Leserman* v. *Bernheimer*, 113 N. Y. 39.

The rule that a partnership does not pay interest to the various partners pending liquidation means, pending liquidation or settlement between the partners, in order to ascertain how much is coming to each partner. But in a limited partnership like this, where it was known on the 1st day of January, 1891, that $200,000 was then payable to the St. Paul Trust Company, interest should be charged from that time. The Trust Company has been held to account for this interest to the legatees, and unless the general partners are charged, it will have to pay the amount out of its own property.

If it be conceded that the general partners would be entitled to a reasonable time to pay, and that the contract did not provide for any interest, still interest would follow at seven per cent. as a matter of law. The agreement to waive interest after January 1, 1891, must be supported by a consideration and must be definite and certain. The burden of proof is upon the defendant to show such contract. Any agreement by the St. Paul Trust Company to accept the principal without interest, or to change the terms of this partnership contract in any manner, was void and without a consideration. *Wharton* v. *Anderson*, 28 Minn. 301; *Little* v. *Rees*, 34 Minn. 277; *Stees* v. *Leonard*, 20 Minn. 494, (Gil. 448;) *Wilson* v. *Powers*, 130 Mass. 127; *Holliday* v. *Poole*, 77 Ga. 159; *Byers* v. *Harris*, 67 Iowa, 685; *Hosea* v. *Rowley*, 57 Mo. 357; *Hume* v. *Mazelin*, 84 Ind. 574; *Cross-*

*m·in* v. *Wohlleben,* 90 Ill. 537; *M'Lemore* v. *Powell,* 12 Wheat. 555; *Parmelee* v. *Thompson,* 45 N. Y. 58.

*Warner, Richardson & Lawrence,* for respondents.

The law certainly is, that the capital does not draw interest after the dissolution of a partnership, simply because a dissolution of the firm has taken place. If on January 1, 1891, the Trust Company could have maintained an action against the defendants for the $200,000. then interest began, otherwise it did not. It is not worth while to hunt the books through to establish a proposition of that character. Interest is damages for the non-payment of money which is due and ought to have been paid. *Barfield* v. *Loughborough,* L. R. 8 Ch. App. Cas. 1.

MITCHELL, J. The limited partnership of Finch, Van Slyck & Co. was composed of the defendants (other than Auerbach) as general partners, and of Auerbach and Kittson, plaintiff's testate, as special partners. Of the capital, Kittson furnished $200,000, and Auerbach $100,000, and the general partners the remainder. The partnership was to commence January 1, 1888, and to end December 31, 1890; and it was provided that if either Kittson or Auerbach should die before December 31, 1890, the capital of the deceased should remain in the business until that date, and all the provisions of the articles of copartnership inure to and bind his heirs and legal representatives. Kittson was to receive 15 per cent., and Auerbach 7½ per cent. of the net profits, the balance to be divided among the general partners in certain specified proportions: "provided, however, that said Kittson shall in any event receive net profits on his said capital invested in said business to the amount of not less than $1,666.66 per month, payable monthly; and the said parties of the first part [the general partners] and said Auerbach hereby guaranty to said Kittson net profit on his said capital to the amount of $20,000 per year *during said term.*"

Section 11 of the articles of copartnership provided that: "(11) At the termination of said partnership by death of said party or parties of the first part, or otherwise, the property thereof shall be

converted into money, and the net proceeds thereof shall be applied as follows: First. To the discharge of all the obligations and liabilities of said firm. Second. To the payment to said Kittson of all his capital invested in said business. Third. To the payment to said Kittson of fifteen per cent. of the net profit which shall have accrued from said business, and not less than the amount guarantied to him as aforesaid; less, however, whatever he shall have drawn on account thereof. Fourth. To the payment to said Auerbach of all his capital invested in said business. Fifth. To the payment of said Auerbach of seven and one half per cent. of the net profit which shall have accrued from said business, and not less than the amount guarantied to him as aforesaid; less, however, what he shall have drawn on account thereof. Sixth. To the payment to said parties of the first part, respectively, of all capital and surplus capital invested by them, respectively, in said business, either in full or pro rata. Seventh. Of the residue, if any, said Finch, Van Slyck, and Young shall each have twenty-six and two thirds per cent., and said McConville shall have the remaining twenty per cent."

Kittson died in May, 1888; but, in accordance with the terms of the contract, his capital remained in the firm, which continued the business until December 31, 1890, when the partnership expired by limitation. Kittson, in his lifetime, and his executor after his death, received the guarantied profit of $20,000 per annum up to December 31, 1890; and as 15 per cent. of the net profits of the business never exceeded that amount in any one year, consequently, he and his estate have received their full share of the profits for the entire term of the partnership. So far the facts are undisputed.

As the end of the term of partnership approached, the general partners began to consider what should be done after that time, and, naturally enough, being desirous that the business should be continued, entered into negotiations with A. H. Wilder and Theodore Borup, looking to their becoming special partners in place of Auerbach and Kittson's estate, the new firm to take the assets and assume the liabilities of the old firm, and continue the business from and after December 31, 1890. It appears from the evidence that Wilder and Borup were not willing that the capital which they proposed to put

in ($300,000) should be used in repaying the capital of Auerbach and Kittson's estate, and leave the liabilities of the old firm resting upon the new one. At this juncture of affairs, negotiations commenced, in September, 1890, between the general partners and the plaintiff.

The court finds (and, as we think, on sufficient evidence) that the defendants other than Auerbach informed plaintiff of these negotiations, and represented to it that the winding up of the business according to the terms of the copartnership articles would consume a long time, and that by the arrangement under negotiation the plaintiff would receive back its capital much sooner than if the terms of the articles were strictly pursued, and that the plaintiff would not be entitled to any interest on its capital after the termination of the partnership. The court finds that it does not appear that these representations were not true; and in view of the fact that the partnership was very largely indebted, and its assets consisted mainly of merchandise and bills receivable, the evidence would have amply justified a finding that these representations were true, provided defendants' construction of the terms of the articles of copartnership was correct, which was purely a question of law.

The court further finds, also on sufficient evidence, that in September, 1890, the defendants other than Auerbach agreed with plaintiff that they would return and pay to it its capital of $200,000 on or before six months from January 1, 1891, in monthly installments, payable at their convenience, and that in consideration thereof plaintiff agreed with them to accept payment of the $200,000 in the manner and at the times proposed, and would not require or insist on other or earlier payments thereof, and that it was mutually understood between the parties that the defendants other than Auerbach might and should, upon the expiration of the partnership, close up and dispose of its business and property, by sale or otherwise, as to them should seem meet. Thereafter the general partners consummated the proposed arrangement with Wilder and Borup, and formed with them a limited partnership, to which, on January 1, 1891, they transferred all the property and assets of the old firm, subject to its liabilities, which the new firm assumed.

The defendants other than Auerbach paid to plaintiff its $200,000 in installments within six months from January 1, 1891, according to the terms of the agreement of September, 1890, except that by mutual consent the payment of the last installment was postponed a few days; but no point is made on this. The plaintiff received these payments without making any claim for interest, and no such claim ever was made until shortly before the commencement of this action, in March, 1892.

The court also finds that there was no understanding or agreement between the plaintiff and the defendants that the capital should draw interest after the termination of the partnership. This, of course, refers to the agreement of September, 1890; and—at least, if construed as meaning that there was no agreement one way or the other as to interest—it is supported by the uncontradicted evidence. The court also found that the general partners, without knowledge of plaintiff, made a similar arrangement with Auerbach, the other special partner, except that he received his money somewhat sooner than plaintiff; but we cannot see how, in view of the other findings, that is at all material, or in any way affects plaintiff's legal rights.

This action was brought to recover interest on the capital from December 31, 1890, up to the respective dates at which it was paid.

If, by the terms of the articles of copartnership, the $200,000 capital was due and payable on December 31, 1890, it may be conceded, in accordance with plaintiff's contention, that it would draw interest from that date, and that a mere postponement of the time of payment would not stop interest; also, that any agreement by plaintiff that it should not draw interest during such extension would be void, both because without consideration, and because not within the authority of an executor.

It therefore seems to us that the case depends entirely upon whether the plaintiff's capital was, under the terms of the articles, due and payable December 31, 1890, the day the partnership ended.

The express provisions of article eleven are a complete answer, as it seems to us, to plaintiff's contention on this point. That article expressly provides just what shall be done at the termination of the partnership. The property is to be converted into money, and the

proceeds applied—First, to discharge all the liabilities of the firm; and, second, the payment to Kittson of his capital. Hence, if, when January 1, 1891, arrived, the provisions of the articles had been strictly followed, the extent of the duty of the general partners would have been to convert the assets of the partnership into money with reasonable diligence, and apply the proceeds, as fast as received, in payment of the firm debts, and plaintiff would not have been entitled to demand one dollar until these debts were all paid in full. Then, and not until then, would it have been the duty of defendants to begin to pay moneys to the plaintiff, and to continue to do so until the $200,000 was all paid. If the defendants prosecuted this process of liquidation in good faith, and with reasonable diligence and ability, the plaintiff would, in the mean time, have been entitled to neither the guarantied 10 per cent. profits, nor to interest on its capital, whether the liquidation occupied six months, one year, or two years. It would not have been entitled to the guarantied 10 per cent. profit, because, by the terms of the articles, that is limited to the term of the partnership. It would not have been entitled to interest, because there is no express provision to that effect in the articles, and none can be implied. Capital does not bear interest, in the absence of an express agreement or a usage of the firm to allow it; and, even if there is an agreement that interest shall be allowed on capital, it ceases to operate at dissolution, for the reason that its earning capacity has ceased, and it is no longer beneficial to the other partners in making profits, but is resolved into property held only for purposes of distribution. The very foundation of a contract for the allowance of interest on capital is its employment in profitable business transactions, or in transactions from which profit is expected to accrue, but such employment of capital terminates at the moment of dissolution, after which no new transaction can be undertaken. *Watney* v. *Wells*, L. R. 2 Ch. App. Cas. 250; *Barfield* v. *Loughborough*, L. R. 8 Ch. App. Cas. 1.

Hence, a claim to have partnership accounts subsequent to the dissolution of a partnership taken with interest, as between the partners, (in the absence of facts raising particular equities,) can be maintained, if at all, only upon the footing of an agreement to that

effect.    There is no unbending rule as to what facts will raise such
an equity as will authorize the allowance of interest in settling part-
nerships after dissolution, but each case must stand on its own facts.
Unreasonable delay by the partner who has possession of the assets
for purposes of liquidation has often been held to raise such an
equity; so, too, an unauthorized use of the partnership property for
individual benefit.    And whenever balances are ascertained, so that
it is determined how much is due each partner, and it becomes the
duty of the partners who hold or have received the most to pay the
others, interest will be allowed.    It is on this class of cases that
plaintiff largely relies, and the doctrine of which, as seems to us,
counsel misapplies.    His claim is that because by the balance sheet
rendered December 31, 1890, it was definitely determined that $200,-
000 was the amount coming to plaintiff, therefore interest began
from that date.    It is difficult to see what bearing this balance sheet
has on the question.    By guarantying a certain net yearly profit on
Kittson's capital, the defendants had impliedly guarantied the ulti-
mate repayment of the capital unimpaired; so that the amount
coming to Kittson on that account was as definitely determined the
day the partnership was formed as it was on the day it ended.    The
doctrine of the cases referred to proceed, not upon the ground, merely,
that the amount due a partner had been definitely ascertained, but
that it had become the duty of the other partner to pay over that
balance; *and it is because of the failure to perform this duty that he
is charged with interest,*—a state of facts which, for reasons already
given, did not exist in this case on December 31, 1890.    Had the
partnership business been liquidated in accordance with the articles,
and profits had resulted from the sale of the property, the plaintiff,
in the absence of the provisions of the seventh subdivision of article
11, would probably have been entitled to its pro rata share of such
profits; but there is no rule of law or principle of equity upon which
it could have been, under the contract, allowed interest on its capi-
tal after dissolution of the partnership.    Had defendants, without a
previous arrangement with plaintiff, on January 1, 1891, transferred
the partnership property to the new firm, probably this might, in
proper proceedings for an accounting, have been sufficient ground for

charging them with interest. But what was done in that regard was done pursuant to a mutual understanding and agreement between the parties. Moreover, the plaintiff is here claiming interest, not on the ground of any acts of omission or commission of defendants, creating a special equity in its favor, but on the ground that it is entitled to it as a matter of contract, under the articles of copartnership.

In conclusion, we cannot see why the arrangement made between the parties was not entirely proper, as well as mutually beneficial. Had the business been closed up, and the property sold, according to the provisions of the articles of partnership, the plaintiff would have gotten nothing out of it, except the $200,000. Defendants, probably, were the gainers, by being enabled to continue the business, but the plaintiff lost nothing by this. On the contrary, it, in all probability, received its money sooner than it otherwise would have done.

Order affirmed.

(Opinion published 54 N. W. Rep. 190.)