# ADELBERT A. AMES v. HANNIBAL H. AMES.[1]

December 30, 1910.

Nos. 16,837—(187).

**Change in partnership agreement — evidence.**

A modification of contract of copartnership, as found by the trial court, was sustained by the evidence.

**Allowance of interest.**

In the absence of an express agreement, partners are not ordinarily entitled to interest as against each other.

**Quære — money advanced by partner.**

Whether a sum advanced by one partner to improve real estate owned by a copartner, but used in the firm business, is, in this case, to be repaid from the firm assets, or to be considered a personal debt, due from the owner of the real estate—quære.

Action in the district court for McLeod county for an accounting of certain copartnership dealings from the commencement of the copartnership, and all the moneys received and paid by plaintiff and defendant, respectively, in relation thereto; that the property, if any remain, be sold and the debts, if any, be paid, and if there be any surplus that it be divided between the parties according to their respective interests. The facts are stated in the opinion. The letter of defendant dated Minneapolis, October 12, 1894, mentioned in the opinion, was attached to the agreement and also attached was the answer of plaintiff, dated Northfield, October 13, 1894, containing these words: "Yours of yesterday setting forth your understanding of our agreement has been received. I will accept your interpretation. When I send you the contract for signature I will have attached this letter of yours and the sketch of the agreement I wrote and which you assented to, as modified by your letter. The contract will be interpreted by the aid of said sketch and modifying letter." The amended answer alleged that the provision found in the fourth

[1]Reported in 129 N. W. 156.

paragraph of the opinion was omitted by mutual mistake, prayed that the agreement be reformed so as to express the true intent of the parties, and for the dismissal of defendant. The reply was a general denial.

The case was tried before Morrison, J., who made findings of fact and as conclusions of law found that defendant was entitled to judgment reforming the contract so that the same should express the true intent and meaning of the parties; that there was due defendant out of the funds of the copartnership the sum of $42.24, and that he was entitled to judgment for that amount; that the partnership be dissolved. From the judgment entered pursuant to the findings, plaintiff appealed. Reversed and new trial ordered.

*James I. Best* and *Flannery & Cooke,* for appellant.

*W. C. Odell* and *Sam G. Anderson, Jr.,* for respondent.

O'BRIEN, J.

Plaintiff, a resident of Massachusetts, owned a flour mill at Northfield, in this state, and on October 15, 1894, entered into a written contract with his cousin, the defendant, which provided that defendant should take possession of the mill, and repair and modernize it, by the expenditure of about $3,000; furnish a miller, who would have charge of the mill, and give as much of his own time as should be necessary to supervise the running of the mill and the business connected therewith. Profits and losses to be divided and borne equally. Either party had the right to cancel the contract by giving written notice of not exceeding three months. Then followed these provisions: "At the termination of this contract from any cause, it is agreed and understood that said mill and all said real estate and the machinery in said mill shall not form any part of the assets to be divided by the parties hereto, but it shall be the property of said Adelbert Ames, or other lawful owner. That, after the payment of all just debts, all other property, whether stock on hand, accounts, bills receivable, or any other property of any nature, shall be equally divided between said parties hereto.

"It is understood that said mill and real estate may at any time be sold by its owners, and if said mill and the real estate be sold by the

owners thereof, so that it cannot be used for the purposes of this contract, then in such case said party of the first part agrees to repay to said party of the second part such sums as he may have expended for labor in modernizing the mill, and also a fair valuation on the machinery put in the mill by said party of the second part."

After a verbal understanding between the parties, and before the contract was signed, some correspondence took place between them, which appears to have been attached to the contract, for the purpose either of modifying it or in explanation of its terms. A quotation from a letter written by defendant to plaintiff, dated October 12, 1894, will sufficiently indicate the understanding of the parties in this respect: "The way I understand it is this: That the necessary repairs on the mill to keep it in good running order, such as bolting cloth, belts, etc., shall be paid from the mill's earnings, which will come in the expense account. But, should the flume or dam or building need repairs, such as painting, a new roof, or anything of that kind, shall expect you to do it; also to pay the insurance on the real estate and taxes, the business to pay taxes and insurance on stock."

The copartnership continued until about December 4, 1899, when it was dissolved. The plaintiff brought this action for an accounting. Defendant in his answer claimed that through inadvertence and mutual mistake there had been omitted from the contract a clause: " * * * That at the time of the dissolution of said copartnership, by notice as in said contract provided or otherwise, that said plaintiff should repay said defendant such sums of money as said defendant had, prior to said dissolution, expended for labor in modernizing the mill, * * * and also a fair valuation for the machinery put in the mill by said defendant * * *"—and asked that the contract be reformed by the addition of a clause to that effect, and an accounting had upon the contract so reformed. The trial court found in favor of the defendant upon this issue, which finding is attacked as being unsupported by the evidence.

1. Aside from the evidence furnished by the situation of the parties and that afforded by the contract itself, much of the evidence relied upon by both parties consisted of correspondence between

them. As is often the case, diametrically opposite conclusions are drawn from the language used by the parties in their letters to each other. But, taking the entire record, we are inclined to think that the evidence sustained the finding of the court upon this question, and the contract must be considered as containing the clause thus added. We come to this conclusion the more readily from a consideration of the situation of the parties at the time the contract was made.

Plaintiff was the owner of a mill, the value of which was estimated to be from $10,000 to $30,000. Apparently some expenditures were necessary to make the operation of the mill financially successful. Defendant appears to have been prepared to furnish the cash for this purpose, and thereupon the parties formed a copartnership to engage in the milling business, agreeing to share the profits and losses equally. To this copartnership plaintiff contributed the mill, agreeing to keep up the taxes and insurance upon it, and defendant contributed the cash required to modernize the mill, the wages of the miller, and some of his time in exercising general supervision.

If the matter were not confused by attempting to ascertain the exact literal meaning of the language used in the contract, it would be apparent that on the dissolution of the copartnership plaintiff would receive his mill intact, defendant would receive back the amount contributed by him to the copartnership, and any profits would be divided equally between the parties. But it is argued that, the contract containing provisions for the payment by plaintiff to defendant of the amount so advanced only in case of a sale of the mill, payment of such amount under any other circumstances must be excluded, and this in spite of the provision giving either party the right of cancellation. If this construction of the contract is true, plaintiff could, immediately after his mill had been at defendant's expense put in efficient and modern condition, have canceled the contract and retained the benefit of defendant's expenditures. We think such a construction of the contract would be so unconscionable that a court of equity should refuse to enforce it. As we look at this case, therefore, the rights .

of the parties are but little changed, if at all, by the modification of the contract as directed by the court.

2. During the continuance of the copartnership certain sums were advanced by each of the copartners; defendant advancing somewhat larger sums, and in addition, as found by the court, making advances for certain repairs to the buildings, which the plaintiff, as already said, undertook to maintain. In connection with some of these advances made by defendant, the plaintiff was charged with interest at the rate of ten per cent. per annum. Such items of interest were allowed by the trial court. In the absence of an express agreement, partners are not ordinarily entitled to interest against each other. We think the interest charges were not justified, and should not have been allowed. St. Paul Trust Co. v. Finch, 52 Minn. 342; Bates, Partnership, § 786.

3. Shortly after the dissolution of the copartnership defendant had on hand as partnership funds the sum of $8,780.21. Of this amount he turned over to plaintiff $2,324.13, claiming the right to retain the balance. The trial court found defendant to be entitled to $42.24 in addition. We have, therefore, to consider the correctness of the distribution so made by defendant, without regard to the propriety of the interest charges already referred to.

As found by the court, at the time of the dissolution defendant had drawn as profits a sum which amounted to $1,929.14 more than the amount received by plaintiff as profit. Plaintiff was therefore first entitled to that sum to equalize the accounts. This would leave $6,851.07 for distribution. The trial court apparently held that this amount should be equally divided, but that the amount expended by defendant to modernize the mill should be repaid to him out of plaintiff's share of the profits. So that, taking the sum of plaintiff's first credit, $1,929.14, and one-half of $6,851.07, to wit, $3,425.53, his share would amount to $5,354.67. As against this amount defendant was entitled to charge $3,072.78, the amount expended by him upon the mill, and $2,324.13, paid to plaintiff by defendant after the dissolution, or a total of $5,396.91, resulting in a balance in defendant's favor of $42.24. This result was arrived at by treating the amount expended by defendant in modernizing

the mill as a debt due personally from plaintiff, and not as a partnership obligation. If the proper construction of the contract is that the sum so expended by defendant should be considered as his contribution to the capital, and repaid to him from the partnership assets before any net profit could be determined, the funds in his hands should have been distributed as follows: Total fund, $8,780.-21, from which there should be first paid to plaintiff $1,929.14, and to defendant $3,072.78, leaving funds remaining for equal distribution, $3,778.29, one-half of which would be $1,889.14. This amount, added to plaintiff's first credit, would show him to be entitled out of the fund to the sum of $3,818.28, from which, if we deduct the amount paid him by defendant, to wit, $2,324.13, we find a balance still due plaintiff of $1,494.15.

We have some difficulty in determining whether or not defendant should be repaid from the partnership funds, or whether the amounts expended by him as described should be considered a personal obligation due him from the plaintiff. The result in one case is a repayment to defendant of the full amount contributed by him to the joint enterprise, while at the same time he retains an excessive amount of the net profits. Upon the other hand, if defendant's contributions are treated as a partnership liability, the plaintiff, being the owner of the improvements and mill, apparently obtains some undue advantage.

In this connection the provision in the contract with reference to the ownership of the mill upon dissolution of the copartnership becomes important. We have considerable doubt that these considerations were fully urged upon the trial court, and in view of that fact, and because in any event there must be a new trial of this action, in order that the interest charges improperly made may be eliminated, we refrain from announcing a final conclusion upon this branch of the case, feeling that it should only be decided after fuller arguments by both parties.

Judgment reversed, and new trial ordered.