# SAMPSON R. CHILD v. C. D. MASTIN.[1]

## July 17, 1925.

## No. 24,140.

**Division of profits between owner and attorney on exchange of farm after litigation.**

1. The defendant owned a farm. There was litigation over it. The plaintiff was his attorney. It was agreed between them that the plaintiff should furnish his legal services, and should have one-half of the amount for which the farm sold in excess of an amount fixed by them at the time of their agreement. The farm was exchanged for the interest of a vendor in a farm which he had sold, on which payments were owing but not due, and an amount in cash not sufficient to pay the sum agreed for the defendant's farm. It is *held* that upon an accounting the defendant should have the value agreed upon between himself and the plaintiff for his farm, with interest from the date of the exchange, and certain amounts paid by him in completing the transaction, with interest; that against such amounts there should be charged all cash received by him as of the date of receipt; and upon the receipt of enough to pay the defendant the sum fixed as the value of his farm, the balance should be divided equally between the parties.

**Findings in reference to fraud and profits.**

2. The evidence does not sustain a finding that certain papers relative to the transaction were procured from the plaintiff by the defendant through fraud; and neither the procuring of the papers, nor the employment by the defendant of other counsel, justifies an accounting judgment fixing the profits at the difference at the time of the exchange between the agreed value of the defendant's farm and the value fixed for the farm for which it was exchanged.

**Interest on agreed value of farm.**

3. The defendant was not entitled to interest upon the value fixed for his farm from the date of the contract with the plaintiff to the date of the exchange.

[1] Reported in 204 N. W. 947.

**Expense of new counsel for defendant.**
    4. The defendant who employed counsel, after the exchange, who performed services in connection with the transaction, is not entitled to charge in the accounting for his services.

**Finding as to negligence and fraud.**
    5. The finding that the plaintiff was not negligent is sustained; and the charges that the defendant and his counsel acted in bad faith, or committed fraud, or were negligent, are not supported by the proofs.

    1. See Joint Adventure, 33 C. J. pp. 862, §§ 71, 72; 863, §§ 73, 75.
    2. See Joint Adventure, 33 C. J. p. 871, § 96.
    3. See Joint Adventure, 33 C. J. p. 863, § 73.
    4. See Attorney and Client, 6 C. J. p. 724, § 292.
    5. See Attorney and Client, 6 C. J. p. 763, § 355.

Action in the district court for Hennepin county for an accounting and other relief. The case was tried before Nye, J., who ordered judgment in favor of plaintiff, as stated on pages 222, 223, infra. Defendant appealed from the judgment. Reversed.

*Jesse Van Valkenburg,* for appellant.

*H. E. Fryberger* and *Lewis W. Child,* for respondent.

DIBELL, J.

Action for an accounting. There was judgment for the plaintiff. The defendant appeals.

We do not sustain the accounting. The parties have few points of agreement. We find it convenient to state first the basis of a right accounting; and then to consider the claims of the plaintiff in support of the accounting made, and the claims of the defendant which do not accord with our view. So much as is possible we abbreviate the facts.

1. In 1912 the defendant owned 292 and a fraction acres of land in Dakota county. One May was in possession, claiming an oral contract of purchase at $45 an acre. The plaintiff, who for many years had been the attorney of the defendant, was representing him in an effort to oust May. Two actions were brought which found

their way here. Mastin v. May, 127 Minn. 93, 148 N. W. 893, Ann. Cas. 1916C, 493; Mastin v. May, 130 Minn. 281, 153 N. W. 756. Mastin was the appellant in each and unsuccessful in both; but the judgment in the last one, the appeal from which was dismissed by this court, determined that May had no right of purchase.

In the course of the litigation it was agreed that the plaintiff should attend to the interests of Mastin and upon the sale of the land should have one-half of the proceeds of the sale in excess of $47.50 per acre which, as computed by the parties, was $13,882.52. In 1912 Mastin had given one Reynolds a contract of sale of the farm for $16,012.50, or about $55 per acre, and had received $1,000 as an initial payment. The plaintiff procured a settlement with Reynolds upon the payment by Mastin to him of the amount which he had received. This was in May, 1914. The judgment in the last case of Mastin v. May, which determined that May had no right of purchase, was entered in September of the same year. The title was then such that the land could be sold.

On April 1, 1918, the farm was sold to one Roberts, or more accurately it was exchanged with him, on the basis of $80 per acre which amounted, as the parties computed it, to $23,390.40, for his interest as vendor in a tract of land in Douglas county which he had sold to one Craswell. The contract called for payments of $17,425, and there was accrued interest from the first of November preceding. There was a prior mortgage of $25,000. The balance to make up the sum of $23,390.40 was to be paid in cash, but when the settlement was made a note was given for part of it. Roberts assigned the contract to the defendant, guaranteed the payment of the $17,425, and gave a deed of quitclaim.

The settlement between Roberts and Mastin was on this basis:

Roberts was charged with the Dakota county land at $80 per acre ................ $23,390.40

He was credited as follows:

Craswell contract of purchase ............$17,425.00

Accrued interest ........................ 281.41

Cash paid Mastin .., .................... 3,830.91

| | |
|---|---:|
| Note to Mastin ........................ | 1,600.00 |
| Taxes for 1917 ........................... | 229.58 |
| Revenue tax on deed ..................... | 23.50 |

                                             $23,390.40

There was trouble with the title to the Douglas county land. Prior to the transfer to Mastin, Roberts had assigned the Craswell contract and conveyed the land to one Jacobson for a recited consideration of $13,300. Perhaps the transfer was as security. The deed was recorded, and it was from the beginning a disturbing element. There is evidence that Jacobson released his interest. An instrument of release was not produced, nor was one recorded. It disappeared. The parties were concerned over the situation. The plaintiff was active and successful in getting securities from Roberts for his guaranty of the $17,425. There was no ground for asking security if Roberts transferred a good and unencumbered title. Roberts mortgaged the Dakota county land for $10,000. In July, 1919, he made a contract to sell it to one Arduser for $29,239 subject to the $10,000 mortgage. After certain enumerated payments were made he was to give a mortgage for $14,000 for the amount remaining, and have a deed. In July, 1920, Roberts assigned the contract of sale to Mastin. Some payments were made to Mastin, Arduser now has the title, and Mastin has a $14,000 mortgage of date November 1, 1921. The details of how this was brought about are unimportant.

The plaintiff obtained from Roberts a deed to Mastin of some Minneapolis property. It was given as security. It was foreclosed and the property bid in by Mastin for $5,855.33 on January 12, 1923. The bid included expenses of foreclosure incurred by Mastin, and $425 in taxes which he paid. Afterwards he paid a mechanic's lien of $298.42. The right of redemption from the foreclosure had not expired at the time of the trial. In making the exchange in 1918 the defendant paid a broker's commission of $300.

In February, 1921, a settlement was made between Mastin and Roberts. Mastin surrendered his interest in the Douglas county

land. He received $500 from Jacobson, and a $500 note of one Potvin, which has not been paid. In the contract there is mention of an additional sum of $1,000 to be paid by Roberts. We trace it no further. Mastin received at different times in 1918 and 1919 $1,061.75 on the Roberts $1,600 note given in April, 1918. He received from the Arduser contract and mortgage $4,000 or more. This was in 1921 and 1922. There may be additional payments.

Taking the facts as we have stated them, the principles which control the accounting are not difficult. The defendant should be credited with $13,882.52, the agreed value of the Dakota county land, and interest from April 1, 1918. He should have credit for $300 paid at that time as a broker's commission and interest. He should have credit for the legal expenses of the foreclosure of the Minneapolis property in 1923, for $425 paid in taxes, and $298.42 paid in discharge of the mechanic's lien, with interest on such items.

He should be charged with the $3,880.81 paid him April 1, 1918; with the two items of the same date of $229.58 taxes, and $23.50, revenue tax on deed, which were paid by Roberts and deducted from the price fixed for the Douglas county property; with $1,061.72 received on the $1,600 Roberts note; and with $4,000, the exact amount to be found, received in 1921 and 1922 on the Arduser contract, either in principal or interest, or upon the $14,000 mortgage.

The interest due the defendant should be computed without annual rests. The amounts with which he is charged should be applied as of the dates of their payment upon interest and principal. The balance due the defendant should be paid out of the property acquired by the Minneapolis foreclosure, or from money received if there was a redemption, the $14,000 mortgage, and the Potvin note. When he is paid, the balance, representing profits, should be divided equally between the plaintiff and the defendant. How this shall be worked out is a matter of detail for the trial court.

Usually a partner, or one engaged in a joint venture, is not entitled in the absence of an agreement to interest on his excess contribution of capital or his advances. Swanson v. Lindstrom, 151

Minn. 19, 185 N. W. 950; Ames v. Ames, 113 Minn. 137, 129 N. W. 156; St. Paul Trust Co. v. Finch, 52 Minn. 342, 54 N. W. 190. The rule does not prevent the allowance of interest on the value fixed for the Dakota county farm, or moneys advanced by the defendant. The joint venture contemplated net profits; and the securities obtained on the exchange, from which the net profits were to come, bore interest; so should the value fixed for the defendant's farm.

There will be no new trial of the general issues. To make the accounting to date additional evidence is necessary. We do not bind the parties to the exact amounts we have stated. None of the exhibits are printed; nor are they indexed. They are scattered among the files. We have picked them out as best we could, and some omissions or some mistakes may have been made. But we have stated the rules that must guide.

2. The accounting judgment which the plaintiff seeks to sustain adjudged as follows:

(1) That plaintiff have judgment against the defendant for $6,249.79.

(2) That it be a lien upon the $14,000 Arduser mortgage and notes which it secured.

(3) That it be a lien upon the interest acquired by the foreclosure of the Minneapolis property.

(4) That defendant be enjoined from encumbering or alienating either the $14,000 mortgage or the interest acquired by foreclosure, until the plaintiff was paid in full.

(5) That plaintiff was entitled to enforce the payment of the judgment by execution, or by a foreclosure in equity of the specific lien which he was given.

The judgment was based upon an accounting as follows:

Sale of Dakota county farm at $80 an acre..$23,391.20
Deduct selling commission ...... .......... 300.00

Net principal April 1, 1918 .............. ....$23,091.20
Interest to date ....................... 7,924.19

         Total    ...................... ·   $31,015.39

Sale of Dakota county farm at $47.50 an acre $13,888.52
Interest from April 1, 1918, to date ........ 4,826.26
                                              _____

Total ........................... $18,714.78
Net balance for distribution ................ $12,300.61
Share of plaintiff ........................ $ 6,150.30

If a sale for cash had been made on April 1, 1918, there would have been a net profit of $9,202.68 for distribution, $4,601.34 for each. The judgment gives substantially this amount to the plaintiff with interest. But there was not a 'sale for money. Less than $5,000 in money was received when the exchange was made. There was no money profit then and there is none yet. Indeed the plaintiff's personal view, as frankly given in his testimony, is that he was not entitled under the terms of the contract to his profit until the transaction was worked into money; and that the defendant should have pay for his farm first.

The judgment gives the plaintiff the profit as it would have been had the transaction been closed at the prices offered and on a cash basis on April 1, 1918, with interest. It makes the plaintiff's profit, so ascertained, a lien upon the property available to pay the agreed value of the defendant's farm, and perhaps prior to the rights of the defendant. This was not the contract. The plaintiff seeks an accounting in equity and must follow the contract.

In January, 1921, the relations between the plaintiff and the defendant became strained. Defendant was then a man 75 years old. His contract with the plaintiff was made 7 years before. The exchange was made 2 years and 9 months before. He and his wife were worried lest they lose the proceeds of the Dakota farm. He did not understand everything. He obtained from the plaintiff the papers relating to the transaction. He discussed them with a business friend. Later he and his friend sought an explanation of the plaintiff. The transaction was complicated. We have referred only to a part of the facts; have found the whole transaction involved; and it is not to be wondered that Mastin did not understand

and was confused and fearful. His attitude may have been irritating—sometimes that of a client is. Friction developed; and when he engaged other counsel, and went with him to the plaintiff, the breach between the two became definite.

The finding is that Mastin fraudulently procured the papers. We do not find substantial evidence of it. Nor is it shown that the papers represented substantial value. In general they were deeds to land, with the grantee's name blank, and there was no evidence that the lands had value. It is claimed that the plaintiff had an attorney's lien upon the papers. Whether he did we do not inquire; for if he did his right of lien does not affect this litigation.

From none of the facts stated can the plaintiff claim a repudiation of the contract by Mastin, from which a right arose to charge the defendant with the receipt of the exchange value of the Douglas county property as of April 1, 1918, from it deduct the value fixed for the Dakota county property, and take one-half of the difference, with interest from April 1, 1918, as his profit. There is a finding that the plaintiff's services were worth $6,150 for the period expiring January 4, 1921. The plaintiff does not seek damages as upon a repudiation, or upon other ground, but asks an accounting upon the contract, and as an incident a lien. His action is in equity. He must look to the contract.

3. The defendant claims that he should have interest from the date of his contract of January, 1914, upon $13,882.52, the value fixed for the Dakota county farm. We do not take this view. The defendant claims that such was the agreement. The court found against him. If he has interest from the date of the contract it is because some principle of law gives it. He had the title and use of his farm until April, 1918, the date of the exchange. There is nothing in the situation which suggests that his farm should be considered a contribution to capital upon which he should have interest from January, 1914, the date of his contract with the plaintiff, and charge against the interest the net profits of the farm. None of the authorities cited by the defendant support such conclusion. The law is against him.

4. The defendant claims that he should be allowed for the services of his counsel whom he employed in 1921, and who had much to do with the closing of the transaction. We do not agree. The plaintiff would have brought the transaction to a close. He might not have taken the same course as the defendant's counsel. There were several lines of action. The defendant wanted other counsel and should pay for his services.

5. Counsel for plaintiff charges the defendant and his counsel with bad faith and fraud and conspiracy and negligence; and counsel for the defendant charges the plaintiff with negligence.

The findings of the trial court upon the defendant's counterclaim negatives negligence in the plaintiff; and the finding is sustained.

There is no proof of bad faith or fraud or conspiracy on the part of the defendant or his counsel—no ground for charging it. Criticism is made of the settlement of February, 1921, resulting among other things in a release of the Douglas county property and the receipt of a small sum for Mastin. The settlement is sustained. The parties do not seem to have regarded the Douglas county property, encumbered and involved as it was, as that out of which payment was to be made for the Dakota county land. Jacobson's deed was troublesome from the beginning; it was the fact that complicated the transaction. The parties looked to the securities which they afterwards got. At the most no more than the $17,425, and interest accrued, less payments, could be exacted from Roberts. Something had to be done, the settlement was in good faith, and we think prudent; and a finding of negligence would not be sustained.

The plaintiff and the defendant's counsel met a difficult situation. Farm land values at the first were exaggerated, then collapsed, and farms could not be sold. As a result of the work of the plaintiff and the defendant's counsel there is now tangible property out of which to pay the defendant, and from which profits may be realized. The trial engendered bitterness. If the zeal of counsel for each party in charging fraud and negligence, or negligence alone, is co-

operatively employed in realizing on the property now available the interests of their clients will be served.

Upon the going down of the remittitur the account will be restated in conformity with this opinion.

Judgment reversed.