## KOWAL *v.* SANG.

1. APPEAL AND ERROR—DE NOVO REVIEW—ESTABLISHMENT OF TITLE.
   Suit to establish title to real estate and for an accounting and other relief, being a chancery suit, is reviewed by the Supreme Court *de novo.*

2. JOINT ADVENTURES—EVIDENCE—PURCHASE OF APARTMENT PROPERTY.
   In suit to establish title to an apartment property upon the purchase of which from trustee in bankruptcy one plaintiff and his brother had made a deposit and in which they had previously purchased an interest, agreement, entered into shortly before expiration of time within which payment of balance had to be made or deposit and interest be lost, whereby defendant was to be paid a substantial sum for procuring balance needed, *held,* together with evidence adduced, to have established an investment, not a loan, and that a joint-venture relationship existed between the parties.

3. CANCELLATION OF INSTRUMENTS—FRAUD—USURY—EQUITY—PUBLIC POLICY.
   In suit to establish title to an apartment property, plaintiffs *held,* not to have established their right to cancel agreement entered into between one of the plaintiffs and his brother and individual defendant relative to purchase of the property from a trustee in bankruptcy where plaintiffs failed to establish that agreement was induced by fraud or was usurious, unfair, inequitable, unconscionable or against public policy, as alleged.

Appeal from Wayne; Merriam (DeWitt H.), J. Submitted June 13, 1945. (Docket No. 55, Calendar No. 42,926.) Decided October 8, 1945.

Bill by Meyer and Isadore Kowal against Bernard Sang, the Sang Corporation, and another for

an accounting, to have deed declared a mortgage and for alternative relief. Bill dismissed. Plaintiffs appeal. Affirmed.

*Samuel H. Rubin* (*Joseph B. Beckenstein*, of counsel), for plaintiffs.

*Levin, Levin, Garvett & Dill* (*Morris Garvett*, of counsel), for defendants.

STARR, C. J. Plaintiffs appeal from a decree dismissing their bill and amended bill of complaint, by which they sought to establish title to the Belcrest apartments property located at 5440, Cass avenue in the city of Detroit.

About 1937 Rubin Kowal and his brother, plaintiff Isadore Kowal, became interested in the Belcrest property, which was subject to a first mortgage securing outstanding bonds in the amount of $1,157,000, and also subject to a second mortgage. They acquired certain of the first-mortgage bonds, the second mortgage, a chattel mortgage on the furniture and furnishings, and a deed from the wife of one of the owners. In proceedings for the foreclosure of the second mortgage they obtained a decree for approximately $180,000. The owners of the property instituted bankruptcy proceedings, and further action in connection with the foreclosure was enjoined.

The Kowals desired to purchase the property from the trustee in bankruptcy, and at their request William Krugly, an attorney engaged in the real estate business in Chicago, presented an offer to the trustee in the name of the Belcrest Apartments Company, a corporation to be organized. This offer was to pay an amount equal to 29 per cent. net to

first-mortgage bondholders and also to pay all fees, compensation claims, and expenses allowed by the bankruptcy court. The Kowals caused the Belcrest Apartments Company to be organized as a Michigan corporation; Krugly was made president, and he assigned his rights under the offer to purchase to the company. The amount to be paid to the trustee in bankruptcy by September 6, 1941, was $347,500. The Kowals had advanced a total of $10,-000, which was deposited with the trustee in connection with the bid for the property.

In order to procure funds to meet its bid, the Belcrest company had obtained a commitment from a life insurance company for a loan of $350,000 upon the security of the apartments property. On June 30, 1941, the insurance company withdrew its commitment, and the Belcrest company was without sufficient funds to meet its bid. On the recommendation of Krugly, the Kowals interviewed and retained one Henry Blum, a Chicago lawyer, and suit was begun against the insurance company to compel specific performance of its loan commitment. When it became apparent that funds would not be available from the insurance company by September 6th, the Kowals sought the aid of attorney Blum relative to obtaining money from other sources. Funds had not been secured by the latter part of August, 1941, and the Kowals were faced with the prospect of the Belcrest company's defaulting on its bid and of losing the deposit of $10,000 and their entire investment in the property. About this time Blum informed them that he had a client who would advance the required $347,500, but the testimony relative to the terms under which this sum would be advanced is in conflict. Blum prepared three written agreements, all dated August 30, 1941, which were signed

by the Kowals. One agreement which is important to the issues involved in the present case, provided as follows:

"To Henry S. Blum, Esquire, Chicago, Illinois.

"We hereby request you to endeavor to procure funds in the amount of $347,500, which, as it is now contemplated, will be deposited in the name of (defendant) Bernard G. Sang (an attorney employed in Blum's office) with the Abstract & Title Guaranty Company or John Dyer, trustee, of Detroit, Michigan. The procurement of these funds and all steps taken by you in that regard are at our express request.

"In the event any conflict shall arise between us and either the said Bernard G. Sang, or the undisclosed principal or principals represented by him, we do hereby expressly consent that you may at the time of such conflict withdraw from representing either ourselves or the Belcrest Apartment Company without prejudice to your right of compensation up to the time of withdrawal, and thereafter represent either said Bernard D. Sang or the undisclosed principal or principals as fully as though you had at no time represented us or the Belcrest Apartment Company.

"Signed: Rubin Kowal, I. Kowal."

By another of the agreements the Kowals agreed to pay $10,000 for all services of Krugly to the Belcrest company and all services of Blum "in and about procuring of funds to consummate the acquisition of the Belcrest apartments." The third agreement was with defendant Sang, the attorney in Blum's office, and there is conflict in the testimony as to whether it was executed by the Kowals in Chicago on that date or in Detroit on September 5th. As this agreement is the principal subject of controversy in the present suit, we quote it in full:

. "Chicago, August 30, 1941.

"Bernard Sang, Esq.,

"Chicago, Illinois.

"*Dear Sir*:

"We make you the following proposal:

"You will deposit with the Abstract & Title Guaranty Company, of Detroit, Michigan, the sum of $347,500, to be paid out by that company in exchange for such deeds, releases, waivers and other instruments as will, in the opinion of the Abstract & Title Guaranty Company and of your counsel, Henry S. Blum, be sufficient to vest in you a good and merchantable title in fee simple to the premises described as follows: (description of Belcrest apartments property).

"To make possible the vesting of title in you, we will contemporaneously with the deposit by you, either deposit or expend or have expended: (a) cash; (b) first mortgage bonds of the issue dated October 1, 1925, and recorded November 2, 1925, given by Max Hamburger and Laura Hamburger, his wife, to Melvin L. Straus, trustee; (c) waivers or releases from holders of outstanding interest acquired for cash; (d) waivers or releases of person entitled to distribution or payment as a condition to the consummation of the deal, the aggregate of which shall represent a cash expenditure of not less than $67,500.

"Upon the acquisition by you of the real estate above referred to, you will cause to be organized a corporation with such capitalization as you shall elect, and with such classification of stock as you, in your sole discretion, shall direct, under the laws of the State of Michigan or the laws of such other State as you desire, and cause all of the stock of the corporation to be issued to you. The capital stock of the corporation so to be organized is to be exchanged for the premises hereinabove set out and issued to you, or your nominee.

"Upon the organization of such corporation, you will cause to be issued two series of debentures, designated, respectively, by the letters 'A' and 'B.' There will be issued to you, or anyone you may designate, debenture or debentures A, which shall have priority in payment, both as to principal and interest, over debenture or debentures B, which shall be deliverable to us. Debenture A shall be retired out of the first funds coming into the possession of the corporation, whether by loan upon a mortgage, unsecured loan, or otherwise. We expressly consent to the making by you, or by the corporation so to be organized, upon the security of the real estate any such loan or loans you may desire for the retirement of debenture or debentures A. Until the retirement of the debentures, they shall bear interest at the rate of 4½ per cent., but the interest on debenture B shall be payable only when and if earned. Debenture B shall at all times as to both principal and interest be subject and subordinate to any loans made or incurred either in the prosecution of the corporation's business or for the retirement of debentures A.

"The corporation to be organized contemplates the making of a first mortgage loan upon the premises in question for such amount and on such terms as you, in your sole discretion, shall approve, or which the duly elected directors of the corporation shall approve. It is also contemplated that a leasing for a term of years will be made on the aforesaid premises which shall be upon such terms and to such lessee as you, in your sole discretion shall approve. Upon the making of the loan and the lease in question, and not before, there will be delivered to William J. Krugly ½ of the capital stock of the corporation less one share of stock.

"The undersigned acknowledge that they are advised you are acting on behalf of an undisclosed principal. We hereby expressly consent that no questions shall at any time be asked by us or any

complaint or action predicated upon anything done, caused to be done or any action withheld with respect to the form of the debentures, the form and classification of the stock, the amount thereof, the form of the loan or loans made by the corporation, either without security or upon the security of the property, the leasehold as to the lessee, the amount of the rents, the terms of the lease, the payment or withholding of dividends, or any other matter or thing relating to the subject matter of this letter, including therein your own wilful misconduct.

"The delivery to us of the debentures above referred to and of the stock to be issued to William J. Krugly, above set out, is in full and complete payment and satisfaction of all our rights to the above premises or against you or any undisclosed principal represented by you.

"Your signature hereon will constitute your acceptance of the foregoing.

"RUBIN KOWAL (Seal)

"I. KOWAL (Seal)

"Accepted: BERNARD SANG."

The record indicates that attorney Blum arranged for his client, Henry Crown, a Chicago businessman, to advance the required $347,500. About September 4th defendant Sang went to Detroit with a check for that amount and met with the Kowals at the office of their attorney. Blum was not present at this meeting, and the testimony is in conflict as to what took place. Isadore Kowal claims that he signed the third agreement, quoted above, in Detroit on September 5th in reliance upon the statements and representations of Sang that it would be subsequently changed so as to provide that the Belcrest company would have title to the property and that the money was advanced as a loan. However, there was testimony indicating that the Kowals signed this agreement without objection and that there were

no representations or understanding that it would be changed. In any event, they signed the agreement, and on September 6th Sang paid $347,500 to the trustee in bankruptcy, and title to the Belcrest property was transferred to him, personally. Coincident with this transaction, the Belcrest company assigned its offer to purchase to Sang, and the Kowals transferred to him their entire interest in the property.

Later, defendant Sang Corporation was organized and attorney Sang transferred his title to the Belcrest property to the corporation. Blum and Sang were directors and officers of the company, and subsequently Rubin Kowal was made a director. In accordance with the terms of the agreement the corporation issued ½ of its authorized capital stock, less one share, to William Krugly for the benefit of the Kowals, and the remaining ½ of the stock, plus one share, to Crown, or to Sang for his benefit. Class A debentures were issued to Crown for his advance and investment of $347,500, and Class B debentures to Isadore and Rubin Kowal for their original investment of $67,500 in the Belcrest property. Rubin accepted his share of class B debentures, but Isadore refused to accept his. The Sang Corporation obtained a loan of $250,000 secured by mortgage on the Belcrest property, which amount, together with other sums arising from the leasing and operation of the property, was apparently paid to Crown to apply upon the class A debentures which he held.

In March, 1942, Isadore Kowal and his son, Meyer Kowal, who had acquired some interest in the property, filed bill of complaint in the present suit. It should be noted that the brother, Rubin, did not join as a plaintiff, and the record indicates that he was satisfied with the deal as negotiated by attorney

Blum. In their bill plaintiffs alleged that the above-quoted agreement with Sang was intended to operate as a mortgage on the Belcrest property to secure the repayment of the $347,500 advanced by Blum's client. They further alleged that attorney Sang stated at the time the agreement was signed that it was "merely for the purpose of evidencing security for said loan." They claimed that the agreement was void because usurious and against public policy. They further alleged that defendant Goldberg, who had leased the Belcrest property, was made a party defendant only for the purpose of subjecting the rentals to the decree of the court. They asked for an accounting; that the agreement be declared void; and that they be determined to be the owners of the property in fee simple, subject only to a mortgage lien for the balance due on the amount advanced by Blum's client. Defendants answered, denying the material charges against them and alleging that the agreement expressed the actual understanding and intention of the parties and created a joint-venture relationship.

In January, 1944, plaintiffs filed an amended bill of complaint, reiterating in substance the charges in their original bill and further alleging fraud, deceit, and trickery by attorney Blum in connection with the written agreements and in the acquisition of title to the Belcrest property by Sang and the Sang Corporation. At the conclusion of the trial, on plaintiffs' motion, attorney Blum was made a party defendant. A cross bill had been filed involving the brother, Rubin Kowal, but it was later dismissed at defendants' request. The trial judge entered a decree dismissing plaintiffs' bill as amended. In his opinion he said:

"The evidence introduced did not sustain the contentions advanced on behalf of the plaintiffs but, on

the contrary, established to the satisfaction of the court that the agreement was entered into by the Kowals without reservations, and that after execution the agreement was ratified and confirmed by both Isadore and Rubin Kowal through agreements between themselves, and their other actions."

Plaintiffs appeal, contending that the above-quoted agreement with defendant Sang was void because usurious and "unfair, inequitable, unconscionable and against public policy." They also claim that the transaction evidenced by said agreement was not a joint venture but constituted a loan secured by a mortgage lien on the Belcrest property. This being a chancery case, we review *de novo*.

It would serve no useful purpose to discuss in detail the conflicting testimony contained in the voluminous record before us. However, there are certain facts which are well established. Isadore and Rubin Kowal, who were experienced in the real estate business, desired to buy the Belcrest property from the trustee in bankruptcy. At their request William Krugly presented an offer to the trustee in the name of the Belcrest company. The offer was accepted, and the company was required to pay the trustee $347,500 by September 6, 1941. Neither the Kowals nor the Belcrest company had sufficient money to meet the bid, and they had been unable to obtain funds by the latter part of August. The Kowals were in a rather desperate situation, because if the bid was not met, they would lose their deposit of $10,000 and all their interest in the property. They employed attorney Blum to assist them in obtaining funds. Plaintiff Isadore Kowal testified:

"I told Mr. Blum that * * * I was trying to get the money other than through him. I told Blum to keep trying to get the Union Central or some other

company, I don't care who he got, but to get some money some way—it didn't matter where. * * *

"I told Blum I hired him to raise the money, I couldn't get any money. * * * I was trying as late as August, and stopped trying to get the money at the time I was in Chicago on August 30th and the deal was made."

In his testimony regarding the execution of the agreement in question Isadore Kowal said, "I needed money and had to sign it." In their amended bill plaintiffs admitted "that with less than three weeks left in which to raise the money to consummate the purchase from the bankruptcy court, they (Kowals) realized their position was hopeless." Rubin Kowal testified:

"Mr. Blum said to my brother Isadore, * * * 'You are known to be a litigant in the State of Michigan, and I am going to draw papers which will tie you up hands and feet because of your reputation.' * * *

"I did not join with my brother in this law suit because I felt morally indebted to Mr. Blum and his client for putting up this money. * * * I was satisfied with the deal. * * *

"I relied on Mr. Krugly as my agent or broker, to see what arrangements could be made. * * *

"I had confidence in him and have confidence in him today. * * * I do not question his integrity at all."

It appears that subsequent to the execution of the agreement in question Isadore Kowal introduced attorney Sang as the "new owner of the Belcrest apartment hotel." In October, 1941, after the transaction in question had been completed, Isadore and Rubin Kowal entered into a written agreement between themselves for the purpose of settling their property affairs. In this agreement they referred

to their interest in the Belcrest property as follows: "Belcrest hotel deal consisting through the ownership of stock and otherwise of a ½ interest in the property." That the stock and debentures issued to the Kowals by the Sang Corporation had a substantial value is evidenced by the fact that defendant Goldberg later offered them $110,000 for their interest.

The testimony of Rubin Kowal, William Krugly, and other witnesses clearly establishes that at the time the agreement in question was executed, the Kowals were satisfied with attorney Blum's negotiation and arrangement to obtain the required $347,-500. Rubin Kowal said, "I was satisfied with the deal." From the agreement in question and the evidence presented, we conclude that this money was advanced as an investment and not as a loan, and that a joint-venture relationship existed between the parties. In view of their dire financial situation at the time they signed the agreement, the Kowals, certainly have little cause for complaint.

Blum received $6,500 and Krugly $3,500 for their services to the Kowals and the Belcrest company in connection with their obtaining the required sum of $347,500. Isadore Kowal generally accused attorney Blum of trickery and improper conduct in connection with the entire transaction, but we find no testimony substantiating this charge. Both Blum and Sang testified that they had no interest whatever in the Sang Corporation or its stock, debentures or property. The first agreement quoted above expressly provided that Blum could withdraw as attorney for the Kowals and the Belcrest Apartment Company and "thereafter represent either said Bernard D. Sang or the undisclosed principal or principals."

The plaintiffs argue that the exculpation clause of the agreement with Sang indicates improper conduct on the part of Blum. However, it is apparent

that Blum, in representing his client Crown in connection with the advance of the $347,500, was somewhat suspicious of the Kowals and was dealing with them at arms' length.   William Krugly testified:

"Mr. Blum advised Rubin and Isadore Kowal and myself that his client was interested in acquiring half of this property and that Mr. Blum would proceed to draft an agreement, and * * * he advised Mr. Rubin and Isadore Kowal then and there that the agreement would be very strong and ironclad. He told them again, because his client had heard of the reputation of Rubin and Isadore Kowal and wanted to be protected in this venture. * * *

"The remarks that Mr. Blum made concerning the reputation of Rubin and Isadore Kowal were that his client had advised him that the nature of Rubin and Isadore Kowal was very litigating and he was not interested in obtaining a lawsuit. * * *

"He (Blum) stated, 'I am handing you a copy of this agreement and I am telling you right now that this thing is mighty powerful and very ironclad,' or words to that effect. * * * They (Kowals) said it was agreeable to them and they know that once they acquire the property that everything would be all right. * * *

"Mr. Blum * * * did not make any promises in my presence, or of which I have personal knowledge to the Kowals that there would be any deviation or relaxing of the terms contained in * * * the agreement (above-quoted)."

From the facts and circumstances shown by the record we are satisfied that the agreement in question represented the understanding and intention of the parties.   We find no evidence indicating that the Kowals were induced by fraud, trickery or misrepresentation to sign the agreement.   Under the facts and circumstances shown, we cannot say that it was usurious, unfair, inequitable, unconscionable or against public policy, as alleged.

The trial judge saw and heard the parties and their witnesses and was in a better position to determine the credibility of and weight to be accorded their testimony. We agree with his conclusion that plaintiffs failed to establish their right to a cancellation of the agreement in question or to other relief prayed for. Other questions presented do not require consideration.

The decree dismissing the bill and amended bill of complaint is affirmed. Defendants may recover costs of both courts.

NORTH, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred. The late Justice WIEST took no part in the decision of this case.