## KOWAL v. SANG CORPORATION.

1. JOINT ADVENTURES—EVIDENCE—ACCOUNTING—INTENT.

   In suit for dissolution of an alleged joint adventure, and for an
   accounting, evidence *held*, to have established that the money
   advanced by an individual defendant was an investment and
   not a loan to plaintiffs, and that the written agreement en-
   tered into which created a joint-venture relationship repre-
   sented the understanding and intention of the parties.

2. SAME—CONTRACTS.

   As between parties, a contract is essential to create the relation
   of joint adventure.

3. SAME—CONTRACTS—PROFITS—TITLE OF PROPERTY.

   The rights of coadventurers or members of a syndicate, in prop-
   erty acquired or used in connection with the joint enterprise,
   depend primarily upon the agreement under which the parties
   are operating and the fact that the contract entitles a party
   to share in the profits arising from property does not neces-
   sarily make him a joint owner of the property itself.

4. SAME—FULFILLMENT OF CONTRACT—TERMINATION OF RELATION-
   SHIP—FORMATION OF CORPORATION.

   Where contract between plaintiffs, then in need of funds in the
   amount of $347,500 to save an investment already made in an
   apartment property agreed with a defendant that latter would
   purchase the apartments and transfer the property to a cor-
   poration, to be organized, have all of its stock issued to him-
   self, issue two series of debentures, with preferential series
   for the sum invested by him and a second and subordinate
   series in the sum of $67,500 to plaintiffs for sum they in-
   vested and then issue for plaintiffs' benefit, one half of the
   capital stock less one share and that such defendant had the
   sole right to lease the premises, plaintiffs did not acquire an
   interest as tenant in common or joint tenant, but only a mi-
   nority stockholder interest in the corporation, the assignment
   of stock therein to them terminating the joint adventure
   relation.

Appeal from Wayne; Richter (Theodore J.), J. Submitted April 15, 1947. (Docket No. 42, Calendar No. 43,676.) Decided June 27, 1947.

Bill by Meyer Kowal and another against Sang Corporation, a Michigan corporation, and others for dissolution of joint venture, sale of assets and accounting. Decree for plaintiffs. Defendants Sang Corporation and Robert Crown appeal. Reversed and bill dismissed.

*Samuel H. Rubin* (*Clark, Klein, Brucker & Waples* and *Wilber M. Brucker,* of counsel), for plaintiffs.

*Levin, Levin, Garvett & Dill* (*Morris Garvett,* of counsel), for defendant Sang Corporation.

*A. W. Sempliner,* for defendant Crown.

SHARPE, J. This is a suit by plaintiffs for the dissolution of a joint venture, the sale of assets, an accounting and for a determination that the Sang Corporation has no interest in the Belcrest Apartments.

A phase of this controversy was before this Court in *Kowal* v. *Sang,* 312 Mich. 339. The property involved is located in Detroit, Michigan. The factual background is as follows: About 1937 Rubin Kowal and his brother, Isadore Kowal, became interested in the Belcrest Apartments which was subject to mortgages aggregating more than a million dollars. The property eventually came under the control of the bankruptcy court. The Kowals desired to purchase the property from the trustee in bankruptcy. They formed a corporation known as Belcrest Apartments Company and entered into an agreement with the trustee in bankruptcy for the purchase of the same for $347,500. The Kowals had advanced the

sum of $10,000 which was deposited with the trustee. The payment of $347,500 was to be made by September 6, 1941. The Kowals sought a loan from an insurance company and when it became apparent that funds would not be available, they sought the services of attorney Blum, who informed them that he had a · client who would advance the required $347,500. An agreement was entered into with Bernard Sang, a copy of which reads as follows:

"Chicago, August 30, 1941.
"Bernard Sang, Esq.,
"Chicago, Illinois.

"*Dear Sir:*
"We make you the following proposal:
"You will deposit with the Abstract & Title Guaranty Company, of Detroit, Michigan, the sum of $347,500, to be paid out by the company in exchange for such deeds, releases, waivers and other instruments as will, in the opinion of the Abstract & Title Guaranty Company and of your counsel, Henry S. Blum, be sufficient to vest in you a good and merchantable title in fee simple to the premises described as follows: * * * (description of Belcrest apartments property).

"To make possible the vesting of title in you, we will contemporaneously with the deposit by you, either deposit or expend or have expended: (a) cash; (b) first mortgage bonds of the issue dated October 1, 1925, and recorded November 2, 1925, given by Max Hamburger and Laura Hamburger, his wife, to Melvin L. Straus, trustee; (c) waivers or releases from holders of outstanding interest acquired for cash; (d) waivers or releases of person entitled to distribution or payment as a condition to the consummation of the deal, the aggregate of which shall represent a cash expenditure of not less than $67,500.

"Upon the acquisition by you of the real estate

above referred to, you will cause to be organized a
corporation with such capitalization as you shall
elect, and with such classification of stock as you,
in your sole discretion, shall direct, under the laws
of the State of Michigan or the laws of such other
State as you desire, and cause all of the stock of
the corporation to be issued to you. The capital
stock of the corporation so to be .organized is to be
exchanged for the premises hereinabove set out
and issued to you, or your nominee.

"Upon the organization of such corporation, you
will cause to be issued two series of debentures, des-
ignated, respectively, by the letters 'A' and 'B.'
There will be issued to you, or anyone you may
designate, debenture or debentures A, which shall
have priority in payment, both as to principal and
interest, over debenture or debentures B, which
shall be deliverable to us. Debenture A shall be
retired out of the first funds coming into the posses-
sion of the corporation, whether by loan upon a
mortgage, unsecured loan, or otherwise. We ex-
pressly consent to the making by you, or by the
corporation so to be organized, upon the security
of the real estate any such loan or loans you may
desire for the retirement of debenture or deben-
tures A. Until the retirement of the debentures,
they shall bear interest at the rate of 4½ per cent.,
but the interest on debenture B shall be payable only
when and if earned. Debenture B shall at all times
as to both principal and interest be subject and sub-
ordinate to any loans made or incurred either in the
prosecution of the corporation's business or for the
retirement of debentures A.

"The corporation to be organized contemplates
the making of a first mortgage loan upon the prem-
ises in question for such amount and on such terms
as you, in your sole discretion, shall approve, or
which the duly elected directors of the corporation
shall approve. It is also contemplated that a leas-
ing for a term of years will be made on the afore-

said premises which shall be upon such terms and to such lessee as you, in your sole discretion shall approve. Upon the making of the loan and the lease in question, and not before, there will be delivered to William J. Krugly ½ of the capital stock of the corporation less one share of stock.

"The undersigned acknowledge that they are advised you are acting on behalf of an undisclosed principal. We hereby expressly consent that no questions shall at any time be asked by us or any complaint or action predicated upon anything done, caused to be done or any action withheld with respect to the form of the debentures, the form and classification of the stock, the amount thereof, the form of the loan or loans made by the corporation, either without security or upon the security of the property, the leasehold as to the lessee, the amount of the rents, the terms of the lease, the payment or withholding of dividends, or any other matter or thing relating to the subject matter of this letter, including therein your own wilful misconduct.

"The delivery to us of the debentures above referred to and of the stock to be issued to William J. Krugly, above set out, is in full and complete payment and satisfaction of all our rights to the above premises or against you or any undisclosed principal represented by you.

"Your signature hereon will constitute your acceptance of the foregoing.

"RUBIN KOWAL (Seal)
"I. KOWAL (Seal)

"Accepted: BERNARD SANG."

The agreement required Sang's principal to invest the sum of $347,500 to be used for the acquisition of the property and for the Kowals to invest the sum of $67,500 which included a cash deposit of $10,000 which accompanied their bid to the trustee in bankruptcy.

The agreement also provided that upon the acquisition of the property, a corporation was to be organized which would issue all of its capital stock to Sang in exchange for the property and that debentures would be issued to Sang and the Kowals in the amounts of their respective investments with Sang's debentures to have priority in payment over the Kowals'. It was also agreed that upon "the making of the loan and the lease in question * * * there will be delivered to William J. Krugly ½ of the capital stock of the corporation less one share of stock."

In pursuance of the terms of the contract Sang paid the sum of $347,500 to the trustee in bankruptcy and acquired the title to the Belcrest apartment hotel. Later the Sang Corporation was incorporated and Sang transferred his title to the property to the corporation. Following the transfer of the property, Sang transferred 499 shares of stock to Krugly as agent of the Kowals and the remaining 501 shares to Sang's principal. Debentures for $347,500 were issued to Sang's principal and debentures for $67,500 were issued to the Kowals.

In March, 1942, the Kowals sought to have the contract set aside on the ground that it did not represent the understanding and intention of the parties; that it was intended to operate as a mortgage on the hotel to secure the payment of the $347,500; and that it was void because it was usurious and against public policy. This case finally reached the Supreme Court. We there said:

"From the agreement in question and the evidence presented, we conclude that this money was advanced as an investment and not as a loan, and that a joint-venture relationship existed between the parties. * * *

"From the facts and circumstances shown by the record we are satisfied that the agreement in question represented the understanding and intention of the parties. We find no evidence indicating that the Kowals were induced by fraud, trickery or misrepresentation to sign the agreement. Under the facts and circumstances shown, we cannot say that it was usurious, unfair, inequitable, unconscionable or against public policy, as alleged."

On October 30, 1945, plaintiffs filed a bill for partition in the circuit court of Wayne county. On December 6, 1945, they filed a supplemental bill of complaint in which the prayer for partition was abandoned and the following allegations made:

"These plaintiffs allege that under the determination of the Supreme Court they are co-owners in a joint adventure with either Henry Crown, or some other unknown individuals named herein as John Doe and Mary Roe, (or, as will hereinafter be pointed out, Bernard Sang or Robert Crown,) and that the formation of the corporation hereinabove referred to as the Sang Corporation was merely a medium for carrying out the joint venture and that under the determination by the Supreme Court as aforesaid the purpose of the parties was to carry out a single enterprise for profit and that the formation of the Sang Corporation, one of the defendants herein, was merely a convenient medium for the purpose of carrying into effect the acquisition of said property."

Plaintiffs ask for the following relief:

"2d. That this court determine with whom plaintiffs are in a joint venture and who the John Doe and Mary Roe are;

"3d. That this court decree a dissolution of the joint venture and cause a sale of the assets thereof to be had in accordance with law;

"4th. That all the defendants come to an accounting with these plaintiffs in connection with their operation of the Belcrest Apartments;

"5th. That this court determine that the defendant, Sang Corporation, has no interest in said property but was merely formed as a convenient medium for carrying out a joint venture."

Defendant Sang Corporation filed an answer to the amended bill of complaint in which it alleges:

"(a) The plaintiffs have no legal title to any of the capital stock issued by this corporate defendant.

"(b) The said plaintiffs have no legal title to or in the real estate described in the bill of complaint.

"(c) The plaintiff Isadore Kowal has an interest in a debenture issued by this defendant, but nothing contained therein confers upon the holder of the said debenture any interest whatsoever in the real estate described in the supplemental bill of complaint.   *   *   *

"(e) The rights of the said plaintiffs are at all events controlled and limited by the said exhibit 'A'; by the terms thereof the said Kowals and their nominee, William J. Krugly, were not to acquire one-half (½) of the capital stock of this corporate defendant, but on the contrary were to acquire one-half (½) of the said capital stock less one share, which capital stock was to be issued in the name of the said William J. Krugly; the effect of the said agreement and the intention of the parties thereto was to vest the control of the said corporation in the undisclosed principal of the said Bernard Sang; and the said control was and is a substantial right which induced the making of the said agreement."

The cause came on for trial and the trial court entered a decree ordering the dissolution of the joint venture and providing for a sale of the property. The decree was based upon the following statements in the court's opinion:

"The evidence fails to disclose any definite time for the continuation of this joint venture except insofar as it may be surmised that it is to continue until Crown is repaid and until the Kowals were repaid. * * *

"This court finds that the only parties in interest in this joint adventure are Isadore Kowal and Meyer Kowal, owning a one-half interest therein and Henry Crown, owning a one-half interest therein, that Bernard Sang and Robert Crown have no interest in said joint adventure of any nature or description whatsoever. * * *

"This court further finds that the equitable owners of the Belcrest property are Isadore and Meyer Kowal owning a one-half interest therein and Henry Crown owning a one-half interest therein.

"This court further finds that the plaintiffs invested in said joint adventure $67,500 and that Henry Crown invested therein $347,500 and that the said Henry Crown is entitled to be reimbursed said sum of $347,500 prior to the plaintiffs receiving payment of their $67,500, and balance remaining thereafter to be divided equally.

"This court further finds that an accounting should be had to determine what moneys have been received by the joint adventurers to this enterprise."

The Sang corporation appeals and urges that the rights of the parties are to be determined by the contract signed by the parties; that the contract does not provide for the acquisition of real estate to be held by the parties as tenants in common, or as joint tenants with the right of survivorship, but does provide for the investment of $347,500 and the acquisition of the property by one of the adventurers, its conveyance to a corporation to be organized by him, the issuance of all the capital stock to him, and its subsequent distribution contingent upon the procurement of a mortgage loan and the execution of a lease upon the property; and

that the agreement of the coadventurers was to reach its final consummation upon the distribution of the corporation's securities and, thereafter, these securities would be the fruits of the adventure.

Defendant Robert Crown also appeals and urges that the trial court was in error in entering a decree *in personam* against Robert Crown without personal service of process upon him; and that he has been deprived of his property without due process of law contrary to the provisions of the State and Federal Constitutions.

Plaintiffs urge that the primary purpose of Henry Crown and the Kowals was to buy the Belcrest Apartments in equal shares; that the corporate medium was used to give Crown control until he was repaid his money and thereafter each was to have equal interests; that Crown has practically been repaid his entire advance; and that the corporation had no function and was a mere passive agency and repository of the naked title of the coadventurers.

The facts developed in this case are in harmony with those in the case reported in 312 Mich. 339. It is established that the $347,500 was advanced as an investment; and that the agreement in question represented the understanding and intention of the parties. This case involves an interpretation of the contract between the parties. In substance the agreement provides that the Belcrest Apartments was to be acquired by Bernard Sang; that Sang would organize a corporation and "cause all of the stock of the corporation to be issued to" himself; that after the corporation was organized two series of debentures would be issued, first in payment of the $347,500 and second in payment of the $67,500; that Sang has the sole right to lease the premises; that upon the making of the loan

and the lease there would be delivered to William J. Krugly one-half of the capital stock less one share and "The delivery to us of the debentures above referred to and of the stock to be issued to William J. Krugly, above set out, is in full and complete payment and satisfaction of all our rights to the above premises or against you or any undisclosed principal represented by you."

It is well settled law that as between parties, a contract is essential to create the relation of joint adventure.

In 30 Am. Jur. pp. 691, 692, it is said:

"The rights of coadventurers or members of a syndicate, in property acquired or used in connection with the joint enterprise, depend primarily upon the agreement under which the parties are operating. The fact that the contract entitles a party to share in the profits arising from property does not necessarily make him a joint owner of the property itself."

We are unable to find language in the contract which indicates that the parties to the contract intended that the real estate was to be held by the parties as tenants in common or as joint tenants with rights of survivorship. We think it clear that Sang's principal was to be a majority stockholder in the corporation to be formed and that Krugly was to be a minority stockholder.

Nor can we find that the joint adventure was to extend beyond the time when the new corporation was formed and stock assigned to the interested parties. We have in mind that the Sang Corporation was not a party to the joint adventure agreement. It appears to us that one of the purposes of the joint adventure was to lodge control of the venture in a party other than the Kowals. Such

purpose is fortified by the fact of the Kowals' reputation as prolific litigants. The concluding paragraph in the agreement: "The delivery to us of the debentures above referred to and of the stock to be issued to William J. Krugly, above set out, is in full and complete payment and satisfaction of all our rights to the above premises or against you or any undisclosed principal represented by you" indicates to us that the joint venture came to an end when the parties received their stock in the new corporation. Plaintiffs have mistaken their remedy. Their rights are such rights as minority stockholders have in a corporation. Because of our conclusions we do not find it necessary to discuss the claims made by the defendant Robert Crown. The trial court was in error in holding that plaintiffs are the equitable owners of a one-half interest in the property or that the Sang Corporation has no interest in the property.

A decree will be entered dismissing plaintiffs' bill of complaint. Defendants may recover costs.

CARR, C. J., and BUTZEL, BUSHNELL, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.