# LESTER TATE v. RALPH BALLARD.[1]

December 31, 1954.

No. 36,270.

[1]Reported in 68 N. W. (2d) 261.

354

*Rosenbloom & Rosenbloom,* for appellant.
*Everett L. Young,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action for the dissolution of a joint venture and for an accounting therein. The trial court determined that during February of 1945 plaintiff and defendant had entered into a joint venture for the operation of a rendering plant at Clovis, New Mexico; that later a corporation was formed to carry out the venture; and that, upon the subsequent sale of assets and liquidation of the corporation, defendant became indebted to plaintiff in the sum of $4,560.48 by the terms of their agreement.

Defendant appeals from an order denying his motion for amended findings or, in the alternative, for a new trial. He contends (1) that the evidence fails to sustain a finding of joint venture; (2) that it compels a finding that, if a joint venture were undertaken, the subsequent formation of the corporation terminated it; (3) that transfer of plaintiff's stock to defendant in the corporate liquidation was for a fixed consideration and terminated plaintiff's further interest in

the corporate assets; and (4) that in the accounting defendant was not credited with interest due him on funds he had advanced to the corporation.

The facts as determined by the trial court are as follows: In the first part of February 1945, plaintiff and defendant purchased a rendering plant at Clovis, New Mexico, for $40,000. Defendant then advanced $4,000 as a downpayment thereon. The balance of the purchase price was to be paid on February 14, 1945. Plaintiff was placed in charge of operations at a salary of $350 per month. Subsequently, he advanced $6,800 on the purchase price and defendant an additional $31,200 to make up the balance of $40,000, and $2,000 in addition for working capital. It was agreed that no interest was to be paid on the sums thus advanced and that, after repayment of investments, profits were to be equally divided. At the trial defendant challenged plaintiff's testimony that he had advanced $6,800 on the project but concedes here that the evidence is sufficient to support the finding with respect thereto.

In the latter part of February 1945 plaintiff and defendant formed a corporation to operate the business and to effectuate the purpose of the parties in the original joint venture. All assets of the business were transferred to it in exchange for 200 shares of common stock for plaintiff and his wife and 200 shares for defendant and his wife, and thereafter, the business was carried on in the corporate name.

On April 15, 1946, all the corporate assets were sold at a profit of $25,472.96, and on May 14, 1946, a partial liquidation of the corporation took place. Plaintiff and defendant each then turned into the corporation 175 shares of their common stock and each received in exchange therefor the sum of $18,375 derived from the sale of assets. Plaintiff endorsed his check in this amount and delivered it to defendant. Defendant applied the full $36,750 which he thus received on his capital investment and against his interest in the corporate assets.

On November 30, 1946, from further proceeds of the sale in his possession defendant paid plaintiff $15,000, at which time plaintiff endorsed and transferred to defendant his remaining 25 shares of

common stock. The trial court found that the $15,000 thus paid constituted an advance on plaintiff's share of the profits of the corporation and that in addition thereto plaintiff was entitled to reimbursement for the $6,800 which he had advanced as capital in the venture. By virtue of the accounting, the court determined that plaintiff's share of the profits actually realized by the corporation, plus the $6,800 which he had advanced as capital, equaled $19,536.48, so that, after crediting plaintiff with the $15,000 paid, there remained a balance due him of $4,536.48 for which judgment against defendant was ordered.

The trial court's determination in this respect was based in part upon a statement prepared by defendant and forwarded to plaintiff sometime after payment of the $15,000. It purported to strike a balance between the parties based upon profits actually realized from the sale of assets and included the following:

| | |
|---|---|
| "The profit on the plant amounted to | 37666.60 |
| The loss of operation to that time was | 3702.65 |
| | |
| The net profit was | 33963.95 |
| Capital gains tax paid was 25% | 8490.98 |
| | |
| Net after taxes | 25472.97 |
| Tates share was | 12736.48 |
| Tate was paid | 15000.00 |
| | |
| Tate owes Ballard | 2263.52" |

No reference was made to the $6,800 which the court found plaintiff had advanced in the venture, and the difference between that amount and the $2,263.52 claimed as above formed the basis for the finding that $4,536.48 was due plaintiff from defendant.

■ A joint venture ordinarily is created where two or more persons agree to combine their money, property, time, or skill in a business operation and share in the profits of the enterprise in some fixed proportion. We have held that four prerequisites are essential to its formation, *i.e.*, (1) contribution of money, property, time, or

skill, not necessarily in equal proportions, by each of the parties; (2) joint proprietorship and mutuality of control of the subject matter of the venture; (3) an agreement for sharing of profits, though not necessarily the losses, arising from the venture; and (4) a contract express or implied establishing the joint venture relationship. See, Rehnberg v. Minnesota Homes, Inc. 236 Minn. 230, 52 N. W. (2d) 454; Eagle-Picher Co. v. Mid-Continent Lead & Zinc Co. (10 Cir.) 209 F. (2d) 917; Stearns v. Williams, 72 Idaho 276, 240 P. (2d) 833; 48 C. J. S., Joint Adventures, § 2; 30 Am. Jur., Joint Adventures, §§ 7 to 12. Defendant concedes that in the instant case there is evidence sufficient to establish the elements of *contribution* and *sharing of profits* but asserts that there is none which would support the essential findings of *contract* covering the venture or *joint proprietorship and control* of the subject matter thereof.

■ With respect to the contract prerequisite, defendant contends that the formation of the corporation and transfer of all assets to it effectively terminated any relationship of joint venture which may have existed prior thereto and converted the status of the parties to that of ordinary corporate stockholders. However, it has been held that formation of a corporation to which the assets of a joint venture are transferred is not inconsistent with the continuance of the joint venture relationship between the parties if it can be established that such was their intent. See, Graffam v. Lynott, 170 Minn. 434, 212 N. W. 937; Donahue v. Davis (Fla.) 68 So. (2d) 163, 171; Mendelsohn v. Leather Mfg. Corp. 326 Mass. 226, 93 N. E. (2d) 537; Latimer v. Piper, 261 Mich. 123, 246 N. W. 65; Enos v. Picacho Gold Min. Co. 56 Cal. App. (2d) 765, 133 P. (2d) 663. As expressed in Donahue v. Davis, *supra,* "The fact that joint adventurers may determine to carry out the purpose of the agreement through the medium of a corporation does not change the essential nature of the relationship."

■ It is clear from these principles that the purpose or intent of the parties in the formation of the corporation is important in determining whether the joint venture continued thereafter. Such intent may be gathered from the actions of the parties as well as their

expressions. Here there was testimony that the corporation was formed primarily for the purpose of saving taxes and thus increasing profits. No corporate meetings of either stockholders or directors were ever held. No minute books were submitted. The enterprise was thereafter conducted by the parties in the same manner as it was before formation of the corporation. Even subsequent to the transfer of the last of plaintiff's stock to defendant, the latter from time to time furnished plaintiff with corporate audits. When the exact corporate profits were finally determined, defendant forwarded to plaintiff the statement which indicated that the $15,000 previously paid was based upon an overestimation of profits and that because thereof plaintiff was indebted to defendant in the sum of $2,263.52, not taking into account the $6,800 advanced by plaintiff. All of such factors lend reasonable support to the trial court's determination that the joint venture relationship continued after the formation of the corporation and that the latter merely constituted an instrument to facilitate and further the operation of the former.

■ Cases on this issue relied upon by defendant are distinguishable. Thus, in Kowal v. Sang Corp. 318 Mich. 312, 316, 28 N. W. (2d) 113, 115, the original joint venture agreement by its terms provided that the issuance of corporate stock to plaintiffs was to be in *"complete payment and satisfaction"* (italics supplied) of their rights to the real property which was the subject of the joint venture. In Wilson v. Maryland, 152 Minn. 506, 510, 511, 189 N. W. 437, 439, there was present no instance of a joint venture—"These parties owned nothing in common" and their negotiations "never passed beyond the executory stage."

■ As to the issue of joint or mutual control, defendant argues that the evidence establishes that plaintiff merely controlled the plant at Clovis, while the corporation exercised the over-all proprietary control of all the assets, and that hence this essential prerequisite to joint venture was absent. It must be recalled, however, that the mutuality of control required is that of the parties to the venture and that in this respect, a comparison of the rights of

plaintiff with those of the corporation, as suggested by defendant, would not be the determinative factor. Further, a disparity in the exercise of actual control as between the parties to a joint venture does not negate such a venture where, as here, the parties through the exercise of their rights as corporate stockholders, or otherwise, may, if desired, each exercise an equal measure of control therein. See, Eagle Star Ins. Co. v. Bean (9 Cir.) 134 F. (2d) 755; Childress v. Younger, 257 Ala. 222, 58 So. (2d) 452, amended by 258 Ala. 219, 61 So. (2d) 808; In re McAnelly's Estate (Mont.) 258 P. (2d) 741; United States F. & G. Co. v. Dawson Produce Co. 200 Okl. 540, 197 P. (2d) 978.

■ Defendant asserts that the $15,000 paid to plaintiff constituted payment in full for his remaining shares of stock and terminated any further interest he might have in the corporate assets. There is a sharp conflict in the testimony with reference to this transaction. Defendant denied that he purchased plaintiff's interest in the corporation at a price to be measured *by the estimated profits* including those derived from the sale of the plant. Plaintiff testified that the $15,000 was an advance against his one-half interest *in the profits* and also that there was to be returned to him his capital investment in the sum of $6,800. The statement forwarded by defendant to plaintiff subsequent to the payment of the $15,000 lends support to the latter version of the transaction. Therein, defendant clearly set forth that the payment of $15,000 was dependent upon and charged against the profit realized in the venture, and that because of an overestimation thereof, at the time the $15,000 was paid, plaintiff was indebted to defendant in the sum of $2,263.52. Based thereon, the court determined that the $15,000 paid to plaintiff was an advance against profits and adjusted the accounts between the parties accordingly. The overpayment of $2,263.52 on profits was subtracted from the $6,800 capital investment and resulted in the determination that defendant was indebted to plaintiff in the sum of $4,536.48, for which judgment was ordered. Clearly, the foregoing is ample to support the trial court's finding with respect to this phase of the transaction.

■ Defendant finally asserts that he is entitled to an offset against plaintiff's claim for interest earned upon defendant's share of the profits remaining in the venture subsequent to payment of the $15,000 to plaintiff. The record is not clear as to the dates defendant received the balance of the proceeds of the sale. Payments made thereon went directly to him and were by him retained. He first gave plaintiff a statement thereof sometime in the summer or fall of 1950, in which no reference was made to interest.

Liability for interest is purely contractual, and a person is not chargeable therewith unless he has agreed to its imposition. County of Redwood v. Winona & St. Peter Land Co. 40 Minn. 512, 41 N. W. 465, 42 N. W. 473. In the absence of such an agreement, we have held that interest may not be charged by one partner against another. Ames v. Ames, 113 Minn. 137, 129 N. W. 156. While in certain cases an equitable obligation to pay interest may be imposed (Lund v. Larsen, 222 Minn. 438, 24 N. W. [2d] 827), clearly, there is no place for the application of such a rule here, where all evidence indicates the parties had agreed that no interest was to be charged.

In view of the foregoing, we must hold that there was no basis for an allowance of interest on the profits belonging to defendant which remained in the venture subsequent to plaintiff's withdrawal of a portion of his share thereof.

Affirmed.