VERA L. SPANNAUS AND ANOTHER v.
OTOLARYNGOLOGY CLINIC AND
PROFESSIONAL ASSOCIATES AND OTHERS.

242 N. W. 2d 594.

May 7, 1976—No. 45653.

*Burns & Norha* and *Monte M. Miller*, for appellants.

*Altman, Geraghty, Mulally & Weiss, Terence O'Loughlin, Jardine, Logan & O'Brien,* and *John R. O'Brien,* for respondents.

Heard before Rogosheske, Peterson, Todd, Yetka, and Knutson, JJ., and considered and decided by the court en banc.

TODD, JUSTICE.

This is an action to recover damages claimed to have been sustained by plaintiffs Vera L. and Fred A. Spannaus (Spannaus) as a result of the alleged medical malpractice of defendants. Spannaus appeals from a judgment entered for defendants following the granting of their motion for a directed verdict at the close of Spannaus' case, and also from an order denying Spannaus' motion for vacation of the judgment and for a new trial. Spannaus' principal contention on appeal is that the case should have been submitted to the jury on the theory of res ipsa loquitur. We affirm.

The basic facts are not in dispute. Mrs. Spannaus entered defendant St. Joseph's Hospital to have a vocal cord nodule removed by defendant Dr. Barclay M. Cram. She was taken to the operating room and anesthetized by Dr. James Crowley. Dr. Cram then entered the operating room and performed the surgery. Mrs. Spannaus, who had no previous history of neck pain or trauma, awoke from surgery with severe neck pains. She sub-

sequently required extensive treatment of her neck, including physical therapy and additional surgery; she wore a neck brace for a year following the operation.

Two medical experts called by Spannaus at trial testified that in their opinions at some point after Mrs. Spannaus was anesthetized and before she awoke in the recovery room, her head and neck were somehow hyperextended to such a degree that she received a fracture of the fourth cervical vertebra, resulting in her subsequent neck pain. Neither expert testified that any of the defendants was negligent or failed to exercise that degree of care and skill ordinarily exercised by other surgeons and hospital employees under similar circumstances. Both experts conceded they did not know how the alleged hyperextension injury occurred, but did speculate as to its possible causes, namely, (1) extension of Mrs. Spannaus' head and neck by the anesthesiologist, (2) extension of Mrs. Spannaus' head and neck by the surgeon, or (3) loss of support of Mrs. Spannaus' head and neck while being removed from the operating table or from the cart on which she was transferred from the operating room to the recovery room.

Spannaus commenced this action against the surgeon, the hospital, and the attending nurses. For reasons not satisfactorily explained in the record, Dr. Crowley, the anesthesiologist, was not named as a defendant. At the close of Spannaus' case, the trial court granted defendants' motion for a directed verdict on the grounds that Spannaus had failed to establish a prima facie case of negligence and that this case was not a proper one for submission to the jury on the doctrine of res ipsa loquitur. The trial court did not find that defendant doctors Cram and Crowley were engaged in a joint enterprise. Spannaus assigns as error the trial court's ruling on each of these grounds.

■ The record in this case contains no direct evidence of negligence on the part of any of the defendants, so the trial court properly ruled that Spannaus did not make out a prima facie case of negligence. The courts should not blind themselves to the fact that, if a person is injured as the result of an act of negligence

occurring while he is anesthetized, no direct evidence of such negligence is available to him absent a forthright admission by one of the parties participating in the operation.

This lack of direct evidence is precisely the reason Spannaus sought to submit the case to the jury under the doctrine of res ipsa loquitur. However, before a plaintiff is entitled to submit his claim to the jury on the theory of res ipsa loquitur, he must establish three things with regard to the injury-producing event: (1) The event must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff. The trial judge ruled that the second prerequisite was not met in this case. Spannaus failed to establish that all possible causes of the alleged injury were under the control of a single defendant. This holding is clearly consistent with the evidence in this case and the decisions of this court. See, Hestbeck v. Hennepin County, 297 Minn. 419, 212 N. W. 2d 361 (1973); Jensen v. Linner, 260 Minn. 22, 108 N. W. 2d 705 (1961); Hoffman v. Naslund, 274 Minn. 521, 144 N. W. 2d 580 (1966); Yates v. Gamble, 198 Minn. 7, 268 N. W. 670 (1936); Wallstedt v. The Swedish Hospital, 220 Minn. 274, 19 N. W. 2d 426 (1945).

Spannaus urges this court to adopt the so-called California rule allowing application of the res ipsa doctrine where multiple defendants have acted collectively and all possible causes of the alleged injury were under the exclusive control of the defendants collectively, even though no single defendant may have had such exclusive control. See, Ybarra v. Spangard, 25 Cal. 2d 486, 154 P. 2d 687, 162 A. L. R. 1258 (1944). We do not reach the issue of whether the Ybarra rule should be adopted in Minnesota, since Spannaus' case does not even meet the liberalized prerequisites for the application of res ipsa loquitur which were set forth in Ybarra.

In Ybarra, all possible causes of the alleged injury were under

the exclusive control of the defendants collectively. In the present case, however, Spannaus did not join the anesthesiologist, Dr. Crowley, as a defendant. One of the possible causes for Mrs. Spannaus' injury which was postulated by Spannaus' own expert witnesses—namely, that Dr. Crowley hyperextended her head and neck—was not under the exclusive control of the named defendants collectively. The California Supreme Court has never extended the Ybarra rule to a situation such as the present one, where plaintiffs had not sued all potential defendants who, as a group, exclusively controlled all possible causes of the injury. Moreover, a California appellate court explicitly declined to extend Ybarra to such a case. Inouye v. Black, 238 Cal. App. 2d 31, 47 Cal. Rptr. 313, 14 A. L. R. 3d 961 (1965). That court persuasively explained its reluctance to expand the doctrine of res ipsa loquitur to such cases as follows:

"A group of persons and instrumentalities may combine in the performance of a medical procedure culminating in an unexpected, mysterious and disastrous result. With the sources of disaster personified in a group of defendants, the demand for evidence pointing the finger of probability at any one of them is relaxed; all may be called upon to give the jury evidence of care. (* * * Ybarra v. Spangard, 25 Cal. 2d 486, 494, [154 P. 2d 687 * * *].) We do not have that situation here. * * * The negligence of each [participating party not joined as a defendant] is just as possible as some unspecified and indeterminate lack of care on the surgeon's part. With only one of the several involved agents before the court, negligence could not be inferred without some evidence reasonably pointing to the surgeon. The trial court correctly concluded that there was no evidence to support the application of res ipsa loquitur." 238 Cal. App. 2d 35, 47 Cal. Rptr. 316, 14 A. L. R. 3d 966.

■ Lastly, Spannaus contends that the failure to join Dr. Crowley as a defendant should not preclude submission of Spannaus' case to the jury on the theory that Dr. Crowley was en-

gaged in a joint enterprise with the named defendants. The general rule is that where one participant in a joint enterprise negligently causes an injury while acting within the scope of such enterprise, every participant therein is liable to the injured party. However, this joint-enterprise theory is not applicable to the present case because Spannaus failed to establish that Dr. Crowley and the named defendants were engaged in a joint enterprise. This court held in Murphy v. Keating, 204 Minn. 269, 273, 283 N. W. 389, 392 (1939), that for a joint enterprise to be found, there must not only exist a mutual undertaking for a common purpose, but also, each participant must have an equal right to direct and govern the movements and conduct of every other participant with respect thereto. Yet, as the trial judge explicitly noted in his memorandum, "Today it is recognized that anesthesiologists are virtually autonomous and the surgeon is not responsible for the anesthesiologist's independent procedures."[1]

Affirmed.

MR. JUSTICE OTIS and MR. JUSTICE KELLY took no part in the consideration or decision of this case.

---

[1] Cases supporting this proposition include, e. g., Thompson v. Lillehei, 273 F. 2d 376 (8 Cir. 1959), affirming 164 F. Supp. 716 (D. Minn. 1958); Huber v. Protestant Deaconess Hospital Assn. 127 Ind. App. 565, 133 N. E. 2d 864 (1956). See, also, Brossard v. Koop, 200 Minn. 410, 274 N. W. 241 (1937).