Edward A. DELGADO et al., Appellants,

v.

Douglas William LOHMAR, Defendant,

Gordon Allen Daniels, Jr., Respondent,

William Allen Greenwood, Respondent,

David Martini, Respondent,

Bryan Knox, Respondent.

No. 49636.

Supreme Court of Minnesota.

Nov. 30, 1979.

Rehearing Denied Jan. 11, 1980.

Jerome E. Kline, Bloomington, for appellants; William C. Hudson, Aitkin, of counsel.

Harold LeVander, South St. Paul, for Daniels.

Neal A. Lano, Grand Rapids, for Greenwood.

John E. Simonett, Little Falls, for Martini.

Richard L. Pemberton, Fergus Falls, for Knox.

Heard before OTIS, ROGOSHESKE, and WAHL, JJ., and considered and decided by the court en banc.

WAHL, Justice.

Plaintiff landowner, accidentally blinded by a shot fired by one of the party of defendant grouse hunters on his property without his knowledge or consent, appeals from a judgment of the Aitkin County District Court granting defendants' motion for summary judgment. The trial court found that, as a matter of law, defendants were not engaged in a joint enterprise and that there were not sufficient facts to submit the case to a jury on the theory of negligence. We affirm in part and reverse in part.

To determine whether the trial court erred (1) in deciding as a matter of law that the defendants were not engaged in a joint enterprise and (2) in granting summary judgment on the issue of negligence, we must first consider the facts before the court by deposition.

Four young men, defendants. Daniels, Greenwood, Martini and Knox, all residing in the Twin City area, informally decided to take a grouse-hunting trip the weekend of September 16–18, 1977, in Aitkin County, on the property of Donald Seig, who was Daniels' uncle. The four of them had often hunted together before. Daniels and Greenwood gave Knox directions as to how to get to the property where the other defendants were to meet. Each defendant arrived separately at the campsite on Seig's property with his family in his own camper. There was no sharing of expenses or equipment. There was no person specifically in charge of the hunt. All defendants made suggestions and eventually agreed on how they would proceed. At least one defendant felt it was appropriate, if he saw a danger unknown to another defendant, to tell him not to shoot. The usual practice of the group was to share the game at the end of the trip.

On Saturday afternoon, September 17, the defendants decided to hunt in a tamarack area on state land some distance from the camp. Defendant Lohmar, Seig's nephew and hired man, volunteered to show them how to get there. The day was overcast, but visibility was good, and there was no wind. After proceeding across a field owned by Seig, watching for birds, the men reached the fence that separated the plaintiff's property from Seig's land. On the plaintiff's side of the fence was a four-acre wooded area in the northeast corner of the tract and to the south a corn field. The corn had been cut down to four-inch stubble, so there was clear visibility from the south edge of the woods south to the plaintiff's home. The plaintiff's property, where it joined Seig's property, was not posted; but it was fenced, and some of the defendants stated that they knew that the land beyond the fence was no longer Seig's property.

As the defendants reached the fence bordering the plaintiff's property. some grouse flew up. Martini wounded one of the birds, which went into the woods on the plaintiff's land. The hunters crossed the fence, jumped over it, according to Martini. Lohmar, Martini, Knox and his dog went into the woods to search for the wounded bird, and finally it was found. It was then decided that Greenwood and Daniels would circle to the west end of the woods and wait as the other three defendants walked through the woods in order to flush more grouse. Three more birds flushed. Two were killed, but the third was wounded. All five defendants then proceeded into the plaintiff's woods to look for the wounded bird.

Meanwhile, the plaintiff and his brother-in-law, who were outside near the plaintiff's farmhouse, heard shotgun blasts and saw four or five men across the corn field on the edge of the woods. The plaintiff did not know who they were and had not granted them permission to hunt. He did not want hunters on his land because of the danger that his two small children would be injured, so he walked quickly in their direction, his brother-in-law following behind. After about 100 yards he reached the edge of the corn field, at which point the hunters

were at least another 100 yards away. Plaintiff continued to walk quickly down the corn field towards them, shouting and whistling loudly to attract their attention. At this time only three of the five hunters were visible to the plaintiff. Plaintiff and his brother-in-law would testify that at least one of the defendants looked straight at them and began talking to the others. Plaintiff felt the defendants had seen them and were discussing the situation. Plaintiff could hear them talking, and he continued walking up to the man who had looked straight at him. When he was a few steps from the woods, a bird flew up. Plaintiff saw the bird and saw one of the hunters raise his gun. He felt in no danger, because the bird was north and east of him. As plaintiff watched the bird, he heard a shot and seconds later realized he was hit. Almost simultaneously, another defendant shot at the bird and hit it. The evidence leaves little doubt that Daniels was the one who injured the plaintiff and Greenwood was the one who killed the bird. All the defendants stated in their depositions that they never saw or heard the plaintiff or his brother-in-law before the accident.

Plaintiff was 25 years of age at the time of the accident. He and his wife had purchased and moved to the farm in May 1977. Their third child was born after the accident. As a result of the accident, plaintiff is totally and permanently blind. Plaintiff and his wife brought suit against the five hunters in the party. All defendants cross-claimed for indemnity or contribution. Defendant Lohmar was subsequently dismissed from the suit. On April 19, 1978, the plaintiffs settled with defendant Daniels, executing a covenant not to sue. The remaining defendants moved for summary judgment after completion of discovery. This appeal followed the granting of that motion.

■■■ 1. The first issue for consideration is whether the defendants were engaged in a joint enterprise while hunting. If they were, plaintiff argues, the negligence of Daniels should be imputed to the remaining defendants.[1] In order to establish a joint enterprise in Minnesota, two elements must be present: (1) a mutual understanding for a common purpose, and (2) a right to a voice in the direction and control of the means used to carry out the common purpose. *Ruth v. Hutchinson Gas Co.*, 209 Minn. 248, 296 N.W. 136 (1941); *Murphy v. Keating*, 204 Minn. 269, 283 N.W. 389 (1939). Pecuniary interest is a third element necessary in some states, but not in Minnesota.[2] *Pierson v. Edstrom*, 286 Minn. 164, 167, 174 N.W.2d 712, 714 n. 2 (1970).

■■■ The relevant facts are undisputed. The mutual undertaking in this case was hunting for birds. A more difficult issue is whether each defendant had sufficient right to control the others so as to make the hunting trip a joint enterprise. Each participant must have an equal right to direct and govern the movements and conduct of every other participant with respect to the mutual undertaking. *Spannaus v. Otolaryngology Clinic*, 308 Minn. 334, 242 N.W.2d 594 (1976). Actual physical control is not necessary, however, since only the legal right to control is required. *Murphy v. Keating, supra.*

In *Ruth v. Hutchinson Gas Co., supra*, this court held that there was sufficient evidence for the jury to find a joint enterprise between several deer hunters, all but

---

1. Plaintiff also cites cases holding that where two independent defendants commit separate and independent acts of negligence at approximately the same time, and only one of the acts could have been the proximate cause of the injury, both defendants may be subject to joint liability. *Matthews v. Mills*, 288 Minn. 16, 178 N.W.2d 841 (1970). This theory is inapplicable because there is no serious dispute that Daniels shot the plaintiff.

2. A distinction should be made between a joint enterprise, which is alleged in this case, and a joint venture, which arises in business transactions. There are four requirements for a joint venture: (1) contribution by all parties, (2) joint proprietorship and control, (3) sharing of profits but not necessarily of losses, and (4) a contract. *Treichel v. Adams*, 280 Minn. 132, 158 N.W.2d 263 (1968); *Rehnberg v. Minnesota Homes, Inc.*, 236 Minn. 230, 52 N.W.2d 454 (1952).

one of whom were asphyxiated while sleeping in a borrowed brooder house attached to a truck. All traveled and slept in the truck and brooder house. Each contributed his share of the expense, each had some task in connection with the trip assigned to him, and each man had an equal voice in the running of the trip. The shared use of the brooder house for traveling and sleeping was important, because the deaths were caused by faulty ventilation in the brooder house.

In the instant case, each of the men traveled and slept separately, and no expenses were shared. Each controlled his own weapon during the hunt where the injury complained of occurred.

Most joint enterprise cases have involved automobile collisions. In these cases it is the equal right to control the automobile that is important. *See Pierson v. Edstrom, supra; Feeser v. Emery*, 270 Minn. 435, 134 N.W.2d 23 (1965); *Murphy v. Keating, supra*. In a case involving a hunting accident, the important factor is whether the hunters have an equal right to control the gun or guns used. In the instant case, each hunter had and used his own gun. Although Daniels stated that he would feel free to warn any member of his party who was in a dangerous situation not to shoot and that he hoped the other members of his party would instruct him not to shoot in a similar situation, the shotgun of each defendant was at all times under the independent care, custody, and control of its owner. Each hunter was confronted with his own split-second decisions as to whether or not to shoot. Each man had a different line of fire and a different line of sight. It was impossible for any one of the party to control the use of the gun of another.

This group of friends was engaged in recreational activity on a gratuitous and voluntary basis, there was no sharing of equipment or expenses, and each person had control of his own gun. Under these circumstances, we hold that the defendants were not engaged in a joint enterprise and that the trial court did not err in granting summary judgment for defendants on this issue.

2. Plaintiff argues further, however, that even if the hunters were not engaged in a joint enterprise, each of the defendants had an individual duty to inform the rest of the hunting group that plaintiff and his brother-in-law were in the area, and that failure to do so was negligence. Such a duty, if it exists, would depend on whether any of the defendants actually saw or heard the plaintiff or his brother-in-law approaching them across the corn field. In considering a motion for summary judgment, the court must take the view of the evidence most favorable to the nonmoving party, in this case the plaintiff. *Rathbun v. W. T. Grant Co.*, 300 Minn. 223, 219 N.W.2d 641 (1974). Under this view of the evidence, there is a clear factual dispute. The plaintiff and his brother-in-law stated that they thought the hunter saw them, and presented facts which indicate that they must have been seen and heard by the hunters. The defendants deny either seeing or hearing the plaintiff before the accident. Summary judgment must not be granted where there is a genuine issue of material fact. *Id.* at 229, 219 N.W.2d at 646. This fact issue is material to the case, however, only if defendants' seeing the plaintiff approaching created some duty that was breached by them.

The fact that an actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action. Restatement (Second) of Torts § 314 (1965). Ordinarily, there is no duty to control the conduct of a third person to prevent him from causing physical harm to another unless a special relationship exists, either between the actor and the third person which imposes a duty to control, or between the actor and the other which gives the other the right to protection. *Cracraft v. City of St. Louis Park*, 279 N.W.2d 801 (Minn.1979). Such special relationships exist between parents and children, masters and servants, possessors of land and licensees, common carriers and

**484**

their customers, or people who have custody of a person with dangerous propensities. Restatement (Second) of Torts § 315 (1965). Thus, generally, the law imposes no duty on people to protect strangers from being harmed by others.

The hunters in this case, however, were together engaged in an extremely dangerous activity, hunting with high-powered guns. Firearms are so dangerous that extra care must be taken to guard against accidents. *See Sutor v. Rogotzke,* 292 Minn. 224, 194 N.W.2d 283 (1972). A person bearing firearms who has knowingly set foot onto the land of another without his knowledge or consent has created an unreasonable risk of harm to those lawfully on the property and must take extra precautions to insure that nobody is injured when he shoots. Being there without consent, he must assume that the landowner may come out and ask him to leave. When several hunters, working together as a team, knowingly enter the property of another without his knowledge or consent, due care requires that each hunter be mindful of the danger created by their entry to the occupants of the property and that each warn his fellow hunters of third persons he knows are in the area. Failure to warn under these circumstances is negligence.

Because a genuine issue of material fact remains as to whether any of the defendants did in fact see the plaintiff, the judgment must be reversed on the issue of negligence and the case remanded for trial on the merits.

Affirmed in part, reversed in part, and remanded.