**Gustave PETERSON, Appellant,**

v.

**Dr. George FORTIER, et al.,
Respondents.**

No. C2–87–69.

Court of Appeals of Minnesota.

June 2, 1987.
Review Denied July 31, 1987.

Lance R. Heisler, Staples, Rollie A. Peterson, Sacramento, Cal., for appellant.

Steven R. Schwegman, Quinlivan, Sherwood, Spellacy & Tarvestad, P.A., St. Cloud, for respondents.

Heard, considered and decided by PARKER, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

PARKER, Judge.

Gustave Peterson sued Dr. George Fortier, Dr. Leland Reichelt, Wadena Medical Center and Tri-County Hospital in a medical malpractice action. The trial court granted summary judgment in favor of Dr. Fortier and Tri-County Hospital. The court ruled for Dr. Fortier on the ground that he had terminated treatment more than two years before the action had been brought; the court released Tri-County Hospital because any negligence would be imputed solely to the doctors and not to the hospital. We affirm in part, reverse in part and remand.

## FACTS

In May 1976 appellant Gustave Peterson contacted his family doctor, respondent Leland C. Reichelt, complaining of epigastric pain. After examining Peterson, Dr. Reichelt diagnosed his condition as cholecystitis and recommended surgery to remove his gall bladder and cystic duct.

On June 1, 1976, Peterson underwent surgery at respondent Tri-County Hospital in Wadena. Dr. Reichelt contacted a surgeon, respondent Dr. George Fortier, to perform the operation with Dr. Reichelt's assistance. Dr. Fortier examined Peterson prior to the operation and summarized his medical history for comparison with Dr. Reichelt's diagnosis. It was Dr. Reichelt's normal practice at the time to refer patients to Dr. Fortier for surgery. The doctors charged the patient separately for their services.

Sometime during the operation, the surgical team left a metal clip inside Peterson's abdominal cavity, attached near his common bile duct. After surgery, the clip worked its way into the duct and salts collected around it, eventually forming a stone.

Dr. Reichelt monitored Peterson's condition for approximately two months following surgery and noticed nothing abnormal. Six months later, however, Peterson contacted Dr. Reichelt and others in his clinic, complaining of severe chest and gastric pain. Because Peterson had a history of hiatal hernia problems, Dr. Reichelt and the others believed these pains were related to the hernia and diagnosed accordingly. Peterson visited Dr. Reichelt and his clinic approximately 20 times over six years, and each time his problems were diagnosed as related either to the hernia or to stress. Peterson did not consult Dr. Fortier or visit Tri-County Hospital after the operation.

On November 17, 1982, Peterson saw Dr. S.J. Spellman of Fargo, North Dakota, who diagnosed his upper gastric and chest pains as choledocholitiasis (gallstones) and recommended surgery. Dr. Spellman operated and removed a gallstone from Peterson's common bile duct. He discovered the metal clip inside the stone upon dissection.

Seventeen months later, on April 18, 1984, Peterson filed a complaint against Drs. Fortier and Reichelt, the Wadena Medical Center and Tri-County Hospital, alleging injury and damages from the doctors' negligence in not removing the clip during the June 1976 surgery.

Fortier and Tri-County Hospital moved for summary judgment on the ground that Peterson's claim against them was barred by the statute of limitations. The trial court denied Dr. Fortier's motion because it was unclear whether he had terminated treatment more than two years prior to the action. The court continued Tri-County's

motion pending clarification of the facts surrounding Peterson's contact with the hospital.

After further discovery, Fortier and Tri-County renewed their motions for summary judgment. This time, the trial court found that because Dr. Fortier had treated Peterson only once, had no post-operative contact, and Peterson's post-operative problems were consulted upon and treated by someone else, Dr. Fortier had, as a matter of law, terminated his treatment on June 1, 1976. The trial court granted Dr. Fortier's motion for summary judgment because Peterson had not brought the action within two years after Dr. Fortier had terminated treatment. The court also granted Tri-County's motion, because it found that any negligence would relate solely to the doctors' conduct and not to the hospital's. Peterson appeals.

### ISSUE

Is appellant's medical malpractice action barred by the applicable two-year statute of limitations?

### DISCUSSION

A motion for summary judgment may be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03; *Grondahl v. Bulluck*, 318 N.W.2d 240, 242 (Minn.1982). The district court must view the evidence in the light most favorable to the nonmoving party, *Vieths v. Thorp Finance Co.*, 305 Minn. 522, 525, 232 N.W.2d 776, 778 (1975) (per curiam), and on appeal this court must view the evidence most favorable to the one against whom the motion was granted. *Abdallah, Inc. v. Martin*, 242 Minn. 416, 424, 65 N.W.2d 641, 646 (1954).

■ Medical malpractice claims must be brought within two years of the date on which the cause of action accrued. Minn. Stat. §§ 541.01, 541.07(1) (1986). The cause of action accrues when the physician's treatment for the particular condition ceases. *Grondahl*, 318 N.W.2d at 243.

■ There are three factors to be considered in determining when treatment ceases: (1) whether there is a relationship between physician and patient with regard to the illness; (2) whether the physician is attending and examining the patient; and (3) whether there is something more to be done. *Grondahl*, 318 N.W.2d at 243 (citing *Schmit v. Esser*, 183 Minn. 354, 358–59, 236 N.W. 622, 625 (1931)).

The trial court considered each factor in ruling on the summary judgment motion. Although something obviously remained to be done (removal of the clip), the evidence indicated there was no ongoing relationship between Dr. Fortier and Peterson after the surgery and that Dr. Fortier did not attend or examine Peterson for anything connected with the gall bladder problem (or anything else) after June 1, 1976. Peterson also had no contact whatsoever with Tri-County Hospital after the surgery. The trial court concluded Dr. Fortier had terminated his treatment of Peterson, as a matter of law, after the date of surgery and the statute of limitations had run before Peterson brought his claim.

On appeal Peterson claims the doctors and the hospital formed a joint enterprise with respect to the surgery. Because the negligent act arose out of the joint enterprise, and because Dr. Reichelt continued treatment after the surgery, Peterson claims his action is not barred and Dr. Fortier and the hospital remain liable.

■ A joint enterprise is established if two elements are present: (1) a mutual understanding for a common purpose, and (2) a right to a voice in the direction and control of the means used to carry out the common purpose. *Delgado v. Lohmar*, 289 N.W.2d 479, 482 (Minn.1979). Pecuniary interest is not an element in Minnesota. *Id.* When one participant in a joint enterprise negligently causes an injury while acting within the scope of such enterprise, every participant is liable to the injured party, *Spannaus v. Otolaryngology Clinic*, 308 Minn. 334, 339, 242 N.W.2d 594, 597 (1976), and the dissolution of a joint enter-

prise does not extinguish tort liability for damages arising out of joint enterprise activities. *See Austin P. Keller Construction Co., Inc. v. Commercial Union Insurance Co.*, 379 N.W.2d 533, 535 (Minn. 1986) (joint venture).

Although doctors who treat the same patient have not been held liable under joint enterprise theory, the supreme court addressed the issue in *Spannaus*. In *Spannaus* the supreme court did not reject the theory as it applied to doctors, but held it inapplicable under the facts because the plaintiff had failed to join one of the doctors in the original suit, and one of the doctors, an anesthesiologist, was found to be an autonomous figure during the operation, not under the surgeon's direction and control. We believe the relationship between the doctors in this case presents a closer question as to whether a joint enterprise existed.

Dr. Fortier admitted in an affidavit that he was the chief surgeon during the operation; however, he admitted in a deposition that he and Dr. Reichelt were acting as partners:

Q: Now, you mentioned an assistant surgeon. Was there an assistant surgeon in this case?

A: Dr. Reichelt.

Q: Dr. Reichelt. And what was (sic) his duties?

A: He holds retractors for you, holds instruments for you; just generally assists with the operation to allow you exposure.

Q: All right, sir. In other words, he is a participant, you might say, as a partner under your direction?

A: That's correct.

Q: All right. And you were there as the chief surgeon, chief of the operating room, whatever you want to call it?

A: Surgeon. Yes.

Q: All right, sir. And what are your duties?

A: To perform the operation.

Q: And do you also have the responsibility of overseeing the whole procedure?

A: That's correct.

Q: And are you responsible for telling each one what to do and should any problems develop making the decisions?

A: Yes. For the most part, um-hum.

The right of mutual control necessary for a joint enterprise to be found is not that of actual physical control, but legal control. *Delgado*, 289 N.W.2d at 482. In *Spannaus* the supreme court defined the element of joint control such that "each participant must have an equal right to direct and govern the movements and conduct of every other participant with respect thereto." *Spannaus*, 308 Minn. at 339, 242 N.W.2d at 597. However, in *Delgado* the court considered it as the "right to a voice in the direction and control of the means used to carry out the common purpose." *Delgado*, 289 N.W.2d at 482. The facts regarding the extent of each doctor's right of control in this case are not sufficiently developed to allow us to conclude that a joint enterprise existed as a matter of law. *See Olson v. Ische*, 343 N.W.2d 284, 289 (Minn.1984). Specifically, more evidence is needed on the doctors' agreement to join in treatment and the duties each agreed to undertake.

If, on remand, it is determined that a joint enterprise existed between Drs. Fortier and Reichelt, an additional question would remain as to whether the joint enterprise continued past the surgery. *See Tate v. Ballard*, 243 Minn. 353, 357, 68 N.W.2d 261, 265 (1954). The record indicates some post-operative contact between the surgeons. We believe additional evidence on this issue would be helpful in determining whether any continuing liability exists.

Although more facts are necessary on the question of whether the doctors are liable under joint enterprise theory, we agree with the trial court's conclusion that the negligence in this matter, if any, related solely to the doctors, and we affirm the summary judgment in favor of Tri-County Hospital.

**DECISION**

Affirmed in part, reversed in part and remanded.