**AUTO OWNERS INSURANCE,**
**Respondent,**

v.

**REINSURANCE ASSOCIATION OF MINNESOTA, North Star Mutual Insurance Company, Appellants,**

**David Mellies, et al., Defendants.**

No. C6–93–2173.

Court of Appeals of Minnesota.

April 5, 1994.

Paul J. Wocken, Cold Spring, for Reinsurance Ass'n of Minnesota.

Marcus J. Christianson, Marshall, for North Star Mut. Ins. Co.

Thomas G. Johnson, Willmar, for respondent.

Considered and decided by PARKER, P.J., and HUSPENI and MULALLY *, JJ.

## OPINION

PARKER, Judge.

Appellants argue the trial court erred in concluding that family members farming together on farms owned separately constitute a joint enterprise. We affirm.

## FACTS

On September 28, 1984, appellant David Mellies, then almost four, injured his foot in an auger accident. The accident occurred on a farm leased and occupied by appellant Leslie Mellies, brother of David's father, Ronald Mellies. The land, bin and auger on which the accident occurred are owned by appellant Virgil Mellies, David's grandfather and the father of Leslie and Ronald Mellies.

On the day of the accident, Ronald was not present on Leslie's farm and was combining corn belonging to Virgil. Leslie was also not present at the time of the injury and was combining beans for Virgil. Virgil was on the premises at the time of the injury but not at the site of the accident.

The three farmers owned separate farms and filed separate tax returns. Each farmer decided individually what to plant on his acreage and paid for his own seeds, fertilizer and other equipment.

Although the three farmers kept their finances separate, they worked together as a family, Ronald testified. They planted, harvested, stored and dried the grains together. They also shared the work and costs of repairs and maintenance.

Virgil owned all but one of the storage bins on the farms. The farmers shared use of the bins but kept track of the amounts of grain belonging to each. Leslie testified that all three had equal access to the bins and that they decided as a group where the various crops would be stored.

Ronald testified that, although Virgil was the "main boss," all three farmers had equal rights to participate in the decision-making.

At trial Virgil described the farming operation as follows:

A. We have this land scattered all around the country here see. So we make a decision in the spring where we're going to plant. Where we're going to start. Try to go in a circle see.

Q. Who's we?

A. The boys and I.

Q. Okay. Is that decision—incidentally is that decision made together?

A. Right.

Q. Does everybody have an equal voice in that decision making?

A. I would say yes. Yes.

Virgil is insured by respondent Auto Owners Insurance (Auto Owners), Leslie Mellies is insured by appellant Reinsurance Association of Minnesota ("RAM"), and Ronald Mellies is insured by appellant North Star Mutual Insurance Company (North Star). After settling with David Mellies' guardian ad litem, Auto Owners sued RAM and North Star for contribution on theories of joint venture and joint enterprise.

After a bench trial, the trial judge concluded there was no evidence that Virgil, Ronald and Leslie Mellies were engaged in a joint venture. He concluded, however, that the

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

three farmers were engaged in a joint enterprise. RAM and North Star appeal the trial court's finding of a joint enterprise.

## ISSUE

Were Virgil, Ronald and Leslie Mellies engaged in a joint farming enterprise?

## DISCUSSION

The existence of a joint enterprise has been held to be a question of law. *Weber by Sanft v. Goetzke*, 371 N.W.2d 611, 616 (Minn. App.1985), *pet. for rev. denied* (Minn. Sept. 16, 1985).

This case was submitted to the trial court on theories of joint venture and joint enterprise. Although the parties appeal only the joint enterprise issue, we believe a brief discussion of the joint venture issue will be helpful.

■ A joint venture exists when two or more persons agree to combine their money, property, time or skill in a business operation and to share in its profits in some fixed proportion. *Tate v. Ballard*, 243 Minn. 353, 356, 68 N.W.2d 261, 264 (1954). It is undisputed that the Mellies kept their crops separate and did not share profits or losses. The trial court concluded that the Mellies were not engaged in a joint venture, and no party appealed that decision.

■ The existence of a joint enterprise is a more difficult question. A joint enterprise exists when two or more persons have (1) a mutual understanding for a common purpose, and (2) a right to a voice in the direction and control of the means used to carry out the common purpose. *Peterson v. Fortier*, 406 N.W.2d 563, 565 (Minn.App. 1987), *pet. for rev. denied* (Minn. July 31, 1987). When one participant in a joint enterprise negligently causes an injury while acting within the scope of such an enterprise, every participant is liable to the injured party. *Id.*

■ The trial court determined that both factors were present and thus a joint enterprise existed:

[T]he Mellies had a mutual understanding regarding mutual assistance with certain farming activities, they had a single common purpose which was to maximize the success of the individual farms through their joint cooperation and decision making. Each individual had a voice in the direction and control of the means to carry out the common purpose. The Mellies would discuss and jointly decide which farm was to be planted or harvested on any particular day. The individuals were not free to ignore the group decision.

We agree. All three farmers testified that they shared in the decision-making and that they farmed together as a family.

Appellants assert, however, that family members helping each other does not constitute a joint enterprise. *See Weber*, 371 N.W.2d at 616. In *Weber*, a child was injured while present on a parcel of family-owned vacation property, which family members were cleaning. The family relationship was one factor in this court's finding of no joint enterprise in *Weber*. *Id.* More importantly, however, this court also found that the family members did not directly control one another and did not submit to the control of one another. *Id.* Family members were free to participate or not because participation in the cleanup was not a condition for sharing in the profits from sale of the land. *Id.*

Here, on the other hand, although the three farmers are family members, as the trial court noted, "they were not free to ignore the decisions of the group regarding which fields to harvest or plant on a given day."

Appellants contend, however, that the trial court erred in focusing on the overall operation rather than focusing on the instrument causing the injury, as did the supreme court in *Delgado v. Lohmar*, 289 N.W.2d 479 (Minn.1979).

In *Delgado*, the supreme court held that because a group of hunters had no common control over the rifle that injured a landowner, there was no joint enterprise. *Id.* at 483. In another hunting case, involving the deaths by asphyxiation of a group of hunters from a poorly ventilated heater in a brooder house, the supreme court held there was a joint

enterprise because the group had pooled money together for a trip and because each had an equal voice in the running of the trip. *Ruth v. Hutchinson Gas Co.*, 209 Minn. 248, 259, 296 N.W. 136, 141 (1941). The factor distinguishing these two hunting cases is whether the group had a right to control the instrument that caused the injury. Appellants argue that, based on these cases, the focus in this case should be on the instrument that caused the injury—the auger, which belonged to Virgil Mellies.

We cannot view the auger alone because that instrument was part of an overall farming operation. The Mellies pooled their labor and planted, harvested, reaped and stored the grains together. The Mellies also shared use of the farm machinery, including use of the auger. Virgil's ownership of the auger is irrelevant; as part of their program of shared labor in running the farms and, in particular, in storing and drying the grain, each farmer had the right to use the auger and the right to control it.

Were we to focus on the auger alone, we reach the same conclusion—that a joint enterprise exists. In *Delgado,* it was clear that the rifles were not for the common use of the hunters in the group. *Delgado,* 289 N.W.2d at 483. Here, on the other hand, the auger was for the common use of all three farmers.

Appellants raise the specter that holding a joint enterprise to exist here will endanger the rural custom of neighboring farmers helping each other on an occasional basis. We believe this to be unlikely. A planned and organized family farming operation such as that of the Mellies cannot be compared with the informal practice of one neighbor helping another on an occasional basis. The distinction is to be found in the right of control. Here, each of the Mellies had a right to participate in the decision-making regarding the farming operation and a right to control the farming machinery. One neighbor helping another, on the other hand, would ordinarily not have a right to participate in the decision-making regarding the farming operation, and therefore, generally in such cases, no joint enterprise could be found to exist.

## DECISION

The trial court did not err in determining that the Mellies were engaged in a joint farming enterprise.

**Affirmed.**