John DOE 169, Respondent,

v.

Paul Alan BRANDON,
et al., Defendants,

Minnesota District Council
of the Assemblies of
God, Appellant.

No. A12–1721.

Supreme Court of Minnesota.

April 9, 2014.

Jeffrey R. Anderson, Sarah G. Odegaard, Jeff Anderson & Associates, PA, Saint Paul, MN, for respondent.

Sarah J. McEllistrem, Thomas E. McEllistrem, Collins, Buckley, Sauntry & Haugh, P.L.L.P., Saint Paul, MN, for appellant.

Bruce Jones, Faegre Baker Daniels LLP, Minneapolis, MN, for amicus curiae Minnesota Religious Council.

OPINION

LILLEHAUG, Justice.

Respondent John Doe 169 brought a negligence claim against appellant Minnesota District Council of the Assemblies of God (District Council) because it recommended the renewal of the ministerial credentials of a church volunteer who sexually abused Doe. The District Council moved for summary judgment. The district court granted the motion on the ground that the District Council owed no duty of care to protect Doe. The court of appeals reversed and remanded. Citing *Domagala v. Rolland,* 805 N.W.2d 14 (Minn.2011), the court of appeals concluded that, even in the absence of a special relationship between the District Council and Doe, a jury could find a duty of care. The court of appeals further concluded that the First Amendment did not bar Doe's negligence claim. On review, and without reaching the constitutional issue, we reverse on the issue of duty.

## I.

The facts in this case are largely undisputed. In 1991, defendant Paul Alan Brandon began working as a youth pastor at Maple Grove Assembly of God (MGAG). Shortly thereafter, Brandon obtained credentials as an ordained Assemblies of God minister.

During Brandon's ministry at MGAG, church members raised concerns regarding his inappropriate relationships with male youths. Gregory Hickle, MGAG's senior pastor and Brandon's supervisor, learned that Brandon hosted a sleepover and insisted that a young male sleep in the same bed with him. Two or three months later, another family notified Hickle that Brandon had pressured their son to sleep in the same bed with him. Hickle ordered Brandon to stop the sleepovers but did not make a report to police because no one

alleged any sexual misconduct. Eventually MGAG advised Brandon that he must "resign under discipline" or be terminated. Brandon elected to resign under discipline in 1999.

After resigning from MGAG, Brandon worked in the information technology field. He also began volunteering with the youth-ministry program at another Assemblies of God congregation, Emmanuel Christian Center (ECC) in Spring Lake Park. Volunteers in the ECC youth-ministry program were not required to have ministerial credentials, and Brandon received all of the training required of lay volunteers.

In 2002, after approximately 3 years of volunteer work at ECC, Brandon became a "volunteer captain." He led "cell group" meetings, which were Friday evening gatherings for either middle school or high school students. Sometimes students would stay overnight at Brandon's home. Doe was one such student.

In 2005, Brandon sexually abused Doe during two sleepovers. When it learned of Doe's allegations of abuse, ECC ended Brandon's volunteer work. In 2010, Brandon pleaded guilty to two counts of criminal sexual conduct in the fourth degree arising out of his abuse of Doe and another youth.

At the time Brandon abused Doe, Brandon still maintained his ministerial credentials. Each year Brandon submitted a renewal application to the District Council, whose role was to make a recommendation to the denomination's governing body, the General Council of the Assemblies of God (General Council). Only the General Council had the authority to renew Brandon's credentials, which it did every year.

In 2004, Hickle left MGAG and joined the District Council as its Secretary and Treasurer. In December 2004 and De-

cember 2005, the District Council, through Hickle, recommended that the General Council again renew Brandon's credentials, effective for the years 2005 and 2006. The General Council did so, as it had done before. In a deposition, Hickle testified that, in recommending renewal, he did not "make a recommendation as to fitness" of Brandon or any other applicant. Rather, the District Council's responsibility was to verify that the applicant had completed all of the preliminary steps in the renewal process. Hickle described the General Council as the organization responsible for assessing an applicant's "fitness."

In his role as Secretary and Treasurer of the District Council, Hickle took no action relative to Brandon's volunteer work at ECC. The District Council itself did not control or supervise ECC's youth-ministry program or its volunteers.

In 2011, Doe commenced this action against Brandon, ECC,[1] and the District Council. The District Council moved for summary judgment on Doe's claims of negligence, negligent supervision, and vicarious liability. The district court granted the District Council's motion for summary judgment on negligent supervision and vicarious liability after Doe conceded that the District Council did not employ Brandon. The district court also granted summary judgment on the negligence claim, concluding that the District Council did not owe Doe a duty of care.

Doe appealed only the order dismissing his negligence claim. In an unpublished opinion, the court of appeals reversed and remanded. The court of appeals held that there was sufficient evidence for a jury to conclude that the District Council's conduct created a foreseeable risk of injury to a foreseeable plaintiff, and thus, under *Domagala v. Rolland,* 805 N.W.2d 14 (Minn.

2011), the District Council owed Doe a duty of care, even in the absence of a special relationship. The court of appeals also held that the First Amendment did not bar Doe's negligence claim. *See Doe 169 v. Brandon,* No. A12–1721, 2013 WL 2302023 at *7–9 (Minn.App. May 28, 2013).

The District Council sought and we granted review on both issues.

## II.

■ The District Council's first argument on appeal is that its recommendations to the General Council that Brandon's ministerial credentials be renewed did not create a duty of care to Doe. The existence of a duty of care is a question of law that we review de novo. *Domagala,* 805 N.W.2d at 22; *Bjerke v. Johnson,* 742 N.W.2d 660, 664 (Minn.2007).

## A.

■ Negligence is the failure to exercise the level of care that a person of ordinary prudence would exercise under the same or similar circumstances. *Flom v. Flom,* 291 N.W.2d 914, 916 (Minn.1980). To recover on a claim of negligence, a plaintiff must prove: (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) that the breach of the duty was a proximate cause of the injury. *Lubbers v. Anderson,* 539 N.W.2d 398, 401 (Minn.1995).

■ The existence of a duty of care is a threshold question because a defendant cannot breach a nonexistent duty. *Domagala,* 805 N.W.2d at 22; *Gilbertson v. Leininger,* 599 N.W.2d 127, 130 (Minn. 1999) ("In the absence of a legal duty, the negligence claim fails."). Minnesota law follows the general common law rule that a person does not owe a duty of care to another—e.g., to aid, protect, or warn that

---

1. Doe and ECC settled in July 2012.

person—if the harm is caused by a third party's conduct. *See Delgado v. Lohmar,* 289 N.W.2d 479, 483 (Minn.1979).

■ Recognizing this rule, Doe relies on *Domagala* to argue that the District Council owed him a duty of care despite the fact that Brandon, a third party, committed the assaults. In *Domagala,* we explained that a duty of care to protect others can arise in two "instances." *Domagala,* 805 N.W.2d at 22–23.

The first instance is when there is a special relationship between a plaintiff and a defendant and the harm to the plaintiff is foreseeable. *Id.* at 23. In *Bjerke,* for example, we held that a duty to protect an invitee from sexual abuse by a third party could be found because there was a special relationship between the homeowner and the invitee. 742 N.W.2d at 665. But in *H.B. ex. rel. Clark v. Whittemore,* because no special relationship existed, we declined to impose a duty of care on a mobile home park manager who took no action after learning that children were being sexually abused by a resident. 552 N.W.2d 705, 707–09 (Minn.1996).

Doe acknowledges that he and the District Council were not in a special relationship. In most cases of harm caused by a third party, that acknowledgment would end the matter. However, Doe urges that we recognize a duty of care based on the second "instance" discussed in *Domagala:* a duty of care exists when "the defendant's *own conduct* creates a *foreseeable risk* of injury to a *foreseeable plaintiff.*" 805 N.W.2d at 23 (emphasis added); *see also Delgado,* 289 N.W.2d at 484 (imposing a duty of care on trespassing hunters to warn fellow hunters of third persons known to be in the area). In *Domagala,*

we recognized a duty of care for the protection of others when the owner of a skid loader shook a bucket attachment that was hanging vertically by one pin. 805 N.W.2d at 27–28. The resulting accident injured the homeowner. *Id.* at 19–20.

■ When we refer to the defendant's "own conduct," we mean misfeasance, which is "active misconduct working positive injury to others." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 56 (5th ed.1984). Nonfeasance, which is "passive inaction or a failure to take steps to protect [others] from harm," *id.,* is not enough. *See Delgado,* 289 N.W.2d at 483.

■ Once we identify the defendant's "own conduct," we then determine whether that conduct created a foreseeable risk of injury to a foreseeable plaintiff. Foreseeability in the context of duty is an issue that is ordinarily reviewed de novo.[2] *Whiteford ex. rel. Whiteford v. Yamaha Motor Corp., U.S.A.,* 582 N.W.2d 916, 918 (Minn.1998).

■ To determine whether the risk of injury to the plaintiff is "foreseeable," we "look at whether the specific danger was objectively reasonable to expect, not simply whether it was within the realm of any conceivable possibility." *Id.* The risk must be "clear to the person of ordinary prudence." *Connolly v. Nicollet Hotel,* 254 Minn. 373, 381–82, 95 N.W.2d 657, 664 (1959). If the connection between the danger and the defendant's own conduct is too remote, there is no duty. *Germann v. F.L. Smithe Mach. Co.,* 395 N.W.2d 922, 924 (Minn.1986).

---

2. Our case law states, without explaining, that in close cases, foreseeability as it relates to duty is a jury question. *See, e.g., Foss v. Kincade,* 766 N.W.2d 317, 322–23 (Minn. 2009). Because this case does not present a close question on foreseeability, we decide the question as a matter of law.

### B.

   Applying our case law to the facts and circumstances of this particular case, we hold that the District Council did not create a foreseeable risk of injury to Doe, and thus the District Council did not owe Doe a duty of care. Simply put, the link between the District Council and Doe's injury is too attenuated. Several undisputed facts, considered together, establish that the connection is remote.[3]

First, the District Council did not employ Brandon, control the ECC youth-ministry program, or supervise its volunteers. The ECC, not the District Council, had the responsibility to vet, train, and supervise Brandon. Second, according to the ECC youth pastor who supervised Brandon's volunteer work, Brandon's credentials from the General Council "didn't short circuit [the volunteer process] in any way." Third, Brandon was a well-established volunteer at ECC long before 2004 when the District Council became aware of Brandon's history through Hickle. By 2005, when he assaulted Doe, Brandon had served as an ECC volunteer for approximately 6 years, including approximately 3 years as a captain. Finally, in the credentials renewal process it was the General Council's responsibility, not the District Council's, to determine fitness.

Therefore, applying the framework of *Domagala*, not only was there no special relationship between the District Council and Doe, but the District Council did not create a foreseeable risk of injury to a foreseeable plaintiff. Thus, as a matter of

law, the District Council had no duty to Doe.

   We emphasize that the existence of a duty to protect others from harm—either arising out of a special relationship or out of a defendant's own conduct—depends heavily on the facts and circumstances of each case. Our decision today is limited to the record before us.[4]

Reversed and judgment reinstated.

---

3. Because we decide the issue of duty on foreseeability, we need not decide whether what the District Council did or did not do after Hickle joined it constituted misfeasance or nonfeasance.

4. Because we hold that the District Council did not owe Doe a duty of care and reverse on

that ground, we do not reach the First Amendment issue argued on appeal. *See Erlandson v. Kiffmeyer*, 659 N.W.2d 724, 732 n. 7 (Minn.2003) (noting that it is our general practice to avoid a constitutional ruling if there is another basis on which a case can be decided).